Hettie **HEINEMAN**, Stephen D. Heineman, James H. Heineman, Yvonne Jensen, and Simon Rose, surviving Executors of the Estate of Daniel N. Heineman, Deceased, and Hettie Heineman

v.

The **UNITED STATES**.

No. 212–64.

United States Court of Claims.

March 15, 1968.

---

Robert Arum, New York City, attorney of record, for plaintiffs. David G. Miller, New York City, of counsel.

Michael I. Sanders, Washington, D. C., with whom was Asst. Atty. Gen., Mitchell Rogovin, for defendant. Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

COLLINS, Judge.

Taxpayers, the surviving wife and the surviving executors of the estate of Daniel Heineman, have brought this refund suit to recover overpayments of income taxes for the calendar years 1944 through 1946 and 1948 through 1952. The parties agree that recovery is time-barred unless the mitigation provisions of the Internal Revenue Code of 1954, sections 1311–15, are applicable.

At all times during the period June 5, 1940, through January 31, 1962, Daniel Heineman, the decedent, owned common stock in the Missouri Kansas Pipe Line Company (hereinafter referred to as "MOKAN"). During the years 1944 through 1954, inclusive, decedent received cash distributions made with respect to his MOKAN stock. For all the years involved in this suit, decedent had claimed all such distributions as nontaxable distributions in liquidation. On auditing decedent's income tax returns in 1950 and thereafter for the years 1944, 1945, 1946, 1948, 1949, 1950, and 1951 (1947 is not involved in this action), the Internal Revenue Service determined that all such cash distributions were dividends on said stock and were taxable as ordinary income. Deficiencies were assessed and were paid by decedent with interest.

In the case of Maguire v. Commissioner of Internal Revenue, 222 F.2d 472

(7th Cir. 1955), the court of appeals held that MOKAN was in a state of partial liquidation within the meaning of section 115 of the Internal Revenue Code of 1939, that the intention to liquidate came into existence on March 27, 1944, and that the distributions during the calendar year 1945 to Maguire were amounts distributed in partial liquidation and were thus not taxable dividends subject to ordinary income tax.

On April 9, 1958, decedent and his spouse timely filed a claim for refund for the year 1954, in which they claimed, *inter alia*, that the MOKAN distribution received in 1954 was not an ordinary dividend distribution, but instead was a nontaxable distribution of capital. On October 13, 1961, the refund was allowed in full. Within 1 year from the date of the allowance of the 1954 refund claim, decedent (together with his spouse for the years in which joint returns were filed) filed claims for refund for the years 1944 through 1946 and 1948

through 1952, contending that the MOKAN cash distributions in those years should also properly be treated as distributions in liquidation rather than as taxable dividends. On April 22, 1963, the taxpayers were notified by the appropriate District Director of Internal Revenue that the refund claims were disallowed in full because they were barred by the statute of limitations.

It is stipulated that such claims had not been filed within 3 years of the time the returns were filed, nor within 2 years from the time the taxes were paid, as prescribed by section 6511(a) of the Internal Revenue Code of 1954 and section 322(b) (1) of the Internal Revenue Code of 1939.

Nevertheless, taxpayers contend that the Commissioner of Internal Revenue (hereinafter "Commissioner") erred in applying the statute of limitations and instead should have applied sections 1311 –15 of the 1954 Code[1] and should have allowed the refund claims. Under the

---

**I.** The pertinent portions of these sections provide, in part, as follows:

"§ 1311. Correction of error

"(a) General rule.—If a *determination* (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

"(b) Conditions necessary for adjustment.—

"(1) Maintenance of an inconsistent position.—* * * an adjustment shall be made under this part only if—

"(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, or

"(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained

by the taxpayer with respect to whom the determination is made.

"and the position maintained by the Secretary or his delegate in the case described in subparagraph (A) or maintained by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

\*  \*  \*  \*  \*

"§ 1312. Circumstances of adjustment

"The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

"(1) Double inclusion of an item of gross income.—* * *

\*  \*  \*  \*  \*

"(4) Double disallowance of a deduction or credit.—* * *

\*  \*  \*  \*  \*

"(7) Basis of property after erroneous treatment of a prior transaction.—

\*  \*  \*  \*  \*

"§ 1313. Definitions

"(a) Determination.—For purposes of this part, the term 'determination' means—

\*  \*  \*  \*  \*

"(3) a final disposition by the Secretary or his delegate of a claim for refund.

\*  \*  \* "

limited circumstances specified therein, these sections lift the bar of the statute of limitations on either an assessment by the Commissioner or a claim for refund to the taxpayer. So far as relief for a taxpayer is concerned, these sections permit an adjustment where (1) there is a determination (as defined in section 1313) which adopts a position maintained by the Commissioner, and (2) that position is inconsistent with the erroneous tax treatment of a transaction in a previous taxable year, and (3) this inconsistency results in double taxation of an item or in one of the other inequitable results enumerated in section 1312.

■ We hold that taxpayers' claims do not fall within the purview of sections 1311–15 because there has been no inconsistent position maintained by the Commissioner as required by section 1311(b) (1) (A). Under the language of section 1311(b) (1), which covers this requirement, a taxpayer can obtain an adjustment for a closed year only if—

* * * there is adopted in the determination a position maintained by the Secretary or his delegate * * * and the position maintained by the Secretary or his delegate * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

The allowance of the 1954 refund claim by the Commissioner is clearly a "determination" within the meaning of section 1313. Also, for the sake of argument only, we are assuming, without deciding, that the position adopted in this determination is inconsistent with previous erroneous tax treatment of MOKAN distributions. Nevertheless, this determination did not adopt a position *maintained by the Commissioner*.

The relevant portion of the 1954 refund claim which taxpayers filed with the District Director reads as follows:

Dividends from Missouri-Kansas Pipe Line Company which have been decided by Court to be non-taxable

distributions were erroneously included in taxpayers' return * * *.

The allowance of the refund by the Commissioner clearly constituted the adoption of a position *maintained by the taxpayers* and not the Commissioner, and yet it is the taxpayers who are here relying on the mitigation provisions to open a closed year. This is contrary to both the language and the purpose of the mitigation provisions.

■ Stated another way, the mitigation provisions do not prevent the Commissioner from pleading the statute of limitations because the Commissioner was not the party who maintained the inconsistent position. Taxpayers, however, contend that since the Commissioner did allow the 1954 refund claim, this in itself is enough to constitute the maintenance by the Commissioner of a position inconsistent with the position taken in prior years with respect to MOKAN distributions. This contention misconstrues the nature of the inconsistent position requirement of section 1311(b) (1). One does not "maintain" a position, in the ordinary sense of that phrase, merely by accepting a contention or position originated and actively asserted by an opposing party. In order for section 1311(b) (1) to apply, defendant, as the party relying upon the bar of the statute of limitations, must be the *active* party in maintaining the position, not merely a passive party acceding to a position actively maintained by taxpayers. As this court said in Karpe v. United States, 335 F.2d 454, 461, 167 Ct.Cl. 280, 292, (1964), cert. denied, 379 U.S. 964, 85 S. Ct. 655, 13 L.Ed.2d 558 (1965):

* * * [T]he requirement of section 1311(b) (1) is that the determination adopt a position inconsistent with the *error* and that this position must have been actively maintained by the party seeking to interpose the bar of the statute of limitations. [Footnotes omitted.] * * *

See also Commissioner of Internal Revenue v. Weinreich's Estate, 316 F. 2d 97, 105 (9th Cir. 1963), which held

that the mitigation provisions only apply in the case of "active inconsistency" by the party pleading the bar of the statute of limitations.

The legislative history of the bill enacting the mitigation sections confirms the fact that the statute requires active urging of a position by a party when it speaks of a "position maintained by" a party. The Senate Report noted that adjustments under the mitigation sections would never modify the application of the statute of limitations "except when the party or parties in whose favor * * * [the statute of limitations] applies shall have justified such modification *by active inconsistency* * * *." [Emphasis supplied.] S.Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938).

The following comment of the Harvard Law Review is also relevant to our conclusion that maintaining a position under the mitigation provision means actively urging the adoption of a position:

> * * * [Corrections under the mitigation provisions] are purely compensatory in that they balance a correct result obtained by an *active party* in an open year with a correction of an error for the benefit of the *passive party* for the closed year. * * * [Emphasis supplied.] Sections 1311–15 of the Internal Revenue Code: Some Problems in Administration, 72 Harv.L.Rev. 1536, 1541 (1958–59).

This interpretation of the inconsistent position requirement is in full accord with the recognized purpose of the mitigation provisions. The Senate Report amply demonstrates that the mitigation provisions were enacted primarily to prevent either the Commissioner or the taxpayer from gaining the advantage of double taxation or double tax avoidance by the offensive use of the statute of limitations. Particularly pertinent is the following language of the Senate Report:

> * * * [U]nder existing law, an unfair benefit * * * [can] be obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of

limitations. * * * [The statute of limitations] was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to the running of the statute. * * * Legislation has long been needed to * * * check the growing volume of litigation by taking the profit out of inconsistency * * *. [S.Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938).]

Thus, the inequity which the mitigation provisions were intended to rectify only exists where a party attempts to exploit the statute of limitations by taking the initiative and actively assuming a position inconsistent with the treatment of the same item in a prior year closed by the statute of limitations. In the instant case, it is indisputable that the Commissioner was attempting no such offensive use of the statute of limitations. The Commissioner was at all times the passive party—allowing taxpayers the refund they requested for 1954, but denying similar refund claims for years closed by the statute of limitations.

Recapitulating, everything that has been said thus far leads to the conclusion that taxpayers are not entitled to open up the closed years by use of the mitigation provisions because the taxpayers, and not the Commissioner, actively maintained the position adopted in the refund determination. However, taxpayers claim that the case of Moultrie Cotton Mills v. United States, 151 F. Supp. 482, 138 Ct.Cl. 208 (1957), is direct authority for the proposition that, in allowing the 1954 refund claim in the instant case, the Commissioner did in fact "maintain a position" which was inconsistent with the position taken in prior years.

In *Moultrie,* the taxpayer in 1941 elected to use the last-in first-out (LIFO) inventory method for tax purposes. In accordance with the applicable Internal Revenue Code sections and regulations,

taxpayer specified, in making this election, that only raw cotton in bales would be inventoried by the LIFO method, and that goods in process and finished goods would be valued at cost or market, whichever was lower. In filing its tax returns for 1941 through 1947, taxpayer computed the value of its inventories in accordance with its 1941 election. In filing its income tax return for the year 1948, taxpayer notified the Commissioner of its intention to adopt the LIFO inventory method to opening and closing inventories of all cotton, including goods in process and finished goods.

The regulation governing election of inventory method (Treas.Reg. 111, § 29.22 (d)–1, T.D. 5407, 1944 Cum.Bull. 83, 85) reads as follows:

> Upon written notice addressed to the Commissioner * * * a taxpayer who has heretofore adopted the elective inventory method in respect to any goods may adopt the method herein authorized and limit the election to the raw material * * *. If this method is adopted as to any specific goods, *it must be used exclusively for such goods for any previous year (not closed by agreement) to which the previous election applies and all subsequent years * * *.* [Emphasis supplied.]

Thus, taxpayer Moultrie was required, under the above regulation, to go back and recompute its inventories for the years 1941 through 1947. The retroactive inventory adjustments resulted in a deficiency for 1947, which the taxpayer paid, and overpayments for 1941 through 1946, for which the taxpayer claimed refunds. The Commissioner allowed refunds for the 3 years with respect to which the statute of limitations had not run, but disallowed refunds for the other 3 years on the basis that the statute of limitations had run.

This court held that:

> * * * [T]he allowance in 1954 of plaintiff's claims for refund for the * * * [open years], based on the required inventory recomputation, is a determination by the Commissioner

inconsistent with the prior (1953) denial of plaintiff's claims for refund for the * * * [closed years] which were based on the same required recomputation. [151 F.Supp. at 485, 138 Ct.Cl. at 214.]

Despite the broad language used in *Moultrie*, that case is distinguishable on its facts and should be limited to its facts. For, in *Moultrie*, it was the *Government's own regulations* which required the taxpayer to go back and recompute its inventories for the years 1941 through 1947. This resulted in double taxation, since the adjustments resulted in a deficiency for 1947, which taxpayer had to pay, and overpayments for certain other years, which the taxpayer could not collect because of the statute of limitations. Thus, *Moultrie* stands for the proposition that allowance of a refund in open years is a position maintained by the Commissioner inconsistent with the refusal to allow a refund for closed years only in the narrow type of situation existing in that case. Obviously, no such situation exists in the instant case.

For the foregoing reasons, taxpayers are not entitled to recover, and their petition is hereby dismissed.