**George E. GLATT et al.**

v.

**The UNITED STATES.**

No. 149–68.

United States Court of Claims.

Dec. 12, 1972.

Evans, Fort Washington Forest, Md., of counsel.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges.

## ON DEFENDANT'S MOTION AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUGDMENT

KASHIWA, Judge.

This case comes before us on defendant's motion for judgment on the pleadings or motion for summary judgment and plaintiffs' cross-motion for summary judgment. We hold for the defendant, allowing its motion for summary judgment.

There is no genuine issue as to any material fact. Briefly stated, the facts are as follows. George E. Glatt and Robert L. and Carolina A. Glatt, plaintiffs herein, filed their income tax returns for the calendar years 1961 and 1962. They paid the taxes as computed in their respective returns. During 1961 and 1962 George E. Glatt and Robert L. Glatt were two of four equal partners in Western Equipment Company, each having a 25 percent interest. Pursuant to an audit of the partnership's tax return for the year 1962, the Internal Revenue Service in June, 1964, proposed certain adjustments to the said returns; these adjustments were only based on inadequate documentation of certain deductions; the plaintiffs and the other partners did not accept these adjustments. While the foregoing was taking place, involuntary bankruptcy proceedings were filed on July 21, 1964, against Western Equipment Company. The Company was adjudged bankrupt on August 20, 1964. Thereafter, by means of a letter dated January, 1965, the defendant proposed revised adjustments to said returns. On May 8, 1965, plaintiffs filed general protests to these proposed adjustments. The accounting firm which was then retained to defend the partnership with relation to the 1961 and 1962 returns was, by September, 1965, able to assemble the records of Western

Bruce L. Bromberg, Oakland, Cal., for plaintiffs; Richard E. Johnston, Oakland, Cal., attorney of record. McKee, Tasheira & Wahrhaftig, Oakland, Cal., of counsel.

Ira Mark Bloom, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller, Washington, D. C., and John E.

Equipment Company. In organizing the material, it became apparent to plaintiffs' accounting firm that it would be best to submit the necessary information to the Internal Revenue Service in the form of amended returns. These amended returns were prepared by the accounting firm and the said amended returns showed, among other adjustments, that certain cost of sales items totaling $44,302.89 should be shifted from the year 1962 to 1961. This cost of sales item was first raised by the taxpayers in September, 1965. The item was entirely separate and distinct from the deductions which the Internal Revenue Service had proposed to disallow on the basis of insufficient documentation.

The remaining two partners, James L. Braghetta and Wesley Daniels, of Western Equipment Company, filed timely claims for refund of their 1961 taxes and, as a result, the 1961 income of each was decreased by $11,075 (one-fourth of $44,302) and the 1962 income of each was increased by the same amount.

Plaintiff George E. Glatt filed in February, 1966, a claim for refund of $6,175 in taxes for the year 1961 and an amended tax return for 1962 showing overpayment of taxes in the sum of $368.75 and together therewith filed a claim for refund of the $368.75. Plaintiffs Robert L. and Carolina A. Glatt also filed in February, 1966, a claim for refund of $4,215 in taxes for the year 1961 and an amended 1962 return showing overpayment of taxes in the sum of $143.15 and together therewith filed a claim for refund of the $143.15. Both of plaintiffs' 1962 amended returns accompanying plaintiffs' claims for refunds showed substantial losses even after including the increased shares of partnership income resulting from the cost of sales adjustment. The Internal Revenue Service on January 16, 1967, allowed these plaintiffs' 1962 claims for refunds. The increase in income for 1962 generated by plaintiffs' respective shares of the $44,302 cost of sales adjustment would not have affected plaintiffs' refund claims for 1962. This is demonstrated by the fact that the Internal Revenue Service, on its own motion, allowed plaintiffs a "deduction" for 1962 equivalent to their respective shares of the cost of sales adjustment.[1]

As for the claims of both plaintiffs for refund for the year 1961, they were disallowed, as untimely, in February, 1968.

Plaintiffs contend that the Internal Revenue Service's actions of January 16, 1967, with respect to plaintiffs' 1962 refund claims, were inconsistent determinations within the meaning of section 1313(a) of the Internal Revenue Code of 1954 which entitle plaintiffs to reopen the statutory period of limitations.

Sections 1311–15 of the Internal Revenue Code of 1954, commonly referred to as "mitigation sections," as material herein, are below quoted.[2] These sec-

---

1. Whether the technique adopted by the Internal Revenue Agent (i. e., granting the taxpayers an offsetting "deduction" in an amount equal to the increase in income) means that the Commissioner has not made a "determination" with respect to these taxpayers, is a question we need not reach. The Government has admitted in its brief and oral argument that the granting of the refunds on January 16, 1967, constituted a determination within the meaning of section 1313(a), and the case was argued by both sides on this basis.

2. The pertinent portions of these sections provide, in part, as follows:

§ 1311. Correction of error.

(a) General rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) Conditions necessary for adjustment.—

(1) Maintenance of an inconsistent position.— * * * an adjustment shall be made under this part only if—

(A) in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment under

tions as applied to this case require the following:

1) a determination

2) which adopts a position maintained by (in this case) the Commissioner (In the present case, since the Commissioner is the beneficiary of the statutory bar, it is his maintenance of the inconsistent position which must be shown. Section 1311(b)(1)(A) above quoted.);

3) and that position is inconsistent with the prior treatment of the item in question;

4) which brings about an unfair result described in one of the paragraphs of section 1312.

█ Plaintiffs are unable to secure the advantage of the mitigation sections because they fail to meet statutory requirement numbered two (2) above. The alleged determination does not adopt a position maintained by the Commissioner. Under the language of section 1311 (b)(1), a taxpayer can obtain an adjustment for a closed year only if:

* * * there is adopted in the determination a position maintained by the Secretary or his delegate * * * and the *position maintained by the Secretary or his delegate* * * * is inconsistent with the erroneous inclu-

sion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be. [Emphasis added.][3]

The record in this case reveals an ambiguity in the plaintiffs' original petition with respect to the date of the required determination. In order to appreciate the nature of arguments made by plaintiffs in this case, we must refer to the plaintiffs' original petition filed on May 13, 1968. In paragraph five thereof, plaintiffs alleged as follows:

In June, 1964, Defendant, upon audit initiated by it, proposed and made adjustments to the partnership information tax return (Treasury Form 1065) of WESTERN EQUIPMENT COMPANY, and of its partners' tax returns for the year 1962. Among said adjustments was one which shifted an item of gross income, to wit, cost of sales of $44,302.89, of the partnership from the year 1962 to the year 1961. That shift had the net effect of increasing gross income for the year 1962 and decreasing gross income for the year 1961.

Based on the foregoing allegations, defendant filed on December 1, 1971, a motion for judgment on the pleadings on the ground that if the determination was in June, 1964, the mitigation provisions

---

section 1314, there is adopted in the determination a position maintained by the Secretary or his delegate, * * *

* * * * *

and the position maintained by the Secretary or his delegate * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

* * * * *

§ 1312. Circumstances of adjustment.
The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

(1) Double inclusion of an item of gross income.—* * *

* * * * *

(4) Double disallowance of a deduction or credit.—* * *

* * * * *

(7) Basis of property after erroneous treatment of a prior transaction.—

* * * * *

§ 1313. Definitions.
(a) Determination.—For purposes of this part, the term "determination" means—

* * * * *

(3) a final disposition by the Secretary or his delegate of a claim for refund.

* * *

3. See also the following comment in the Harvard Law Review:
"* * * [Corrections under the mitigation provisions] are purely compensatory in that they balance a correct result obtained by an active party in an open year with a correction of an error for the benefit of the passive party for the closed year. * * * Sections 1311–15 of the Internal Revenue Code: Some Problems in Administration. 72 Harv.L.Rev. 1536, 1541 (1958–59)."

cannot apply to such determination because, in 1964, the statute of limitations had not run on taxpayers' taxable year 1961. Defendant referred to section 1311(a) which provides:

*If* a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, *on the date of the determination, correction of the effect of the error* referred to in the applicable paragraph of section 1312 *is prevented by the operation of any law* or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314. [Emphasis added.]

Defendant further cited United States v. Rushlight, 291 F.2d 508, 519 (9th Cir. 1961), which held:

\* \* \* Section 3801 [predecessor of Sections 1311–1315] is a remedial statute designed to alleviate abuses and hardships under the statute of limitations. It cannot be invoked by a taxpayer who has slept on his rights and allowed the statute of limitations to run when he could have filed a refund claim within the statute of limitations.

Plaintiffs, realizing the position they were in, filed on January 3, 1972, a motion for leave to amend their first petition and file an amended petition. In support of the motion to amend, plaintiffs stated as follows:

\* \* \* In the first paragraph the defendant's statement refers to an audit in June, 1964, by which the plaintiffs' tax returns were then adjusted by shifting costs of sales of $44,302.89 from 1962 to 1961 (page 6 of the defendant's brief). In fact, no such adjustment was then made; adjustments resulting in a deficiency were proposed at that time, *but were based upon inadequate documentation of certain deductions, and not upon the shift of specific items to other accounting periods.* The reference in the last paragraph of the defendant's statement (page 7 of its brief) to a "determination" in 1964 is based upon the foregoing error. The only "determination" referred to in the petition is that in paragraph 8, which is alleged to have occurred "on or about January 16, 1967" (petition, page 3). [Emphasis added.]

In other words, the adjustments proposed in June, 1964, did not have anything to do with the shifting of cost of sales of $44,302.89 but were only *"based upon inadequate documentation of certain deductions."* The memorandum accompanying the motion to amend presented to this court makes it clearer that the shifting of the cost of sales was not mentioned at all in 1964 but it was a result of plaintiffs "reconstructing the financial records needed to determine the true tax liability of the partnership and its members."

An affidavit by Jack J. Dreiman, a licensed Certified Public Accountant, who represented the partnership from about February, 1965, filed by plaintiffs in this case shows that he organized the records and it was the firm which discovered that certain purchases were recorded in the wrong period. In his affidavit he stated:

Some time in May, 1965, we were able to get the records of Western Equipment Co., including purchase documents and details of claims filed with the Referee in Bankruptcy. After organizing the material, it became apparent that the adjustments to the books and tax returns of Western Equipment Co. were so complex that it would be of help to organize them in the form of amended returns so as to be readily understandable. This was the information Mr. Braghetta was to have prepared for informal conference in August, 1964. *We intended to submit the information to the IRS in the form of amended returns at the conference proceeding.* This action on the part of our firm presented in detail items which would have been included

in the protests filed in a general nature earlier had they been known at that time. *We determined that there were unrecorded purchases and that some of the purchases that had been recorded had been recorded in the wrong period.* [Emphasis added.]

In other words, the matter of shifting the cost of sales from 1962 to 1961 originated with the plaintiffs and it was actively asserted in their own amended 1962 returns filed by plaintiffs with defendant in February, 1966. Their own accountant's statement, filed in this court by plaintiffs themselves, so states. The allowance of the refund by the Commissioner on January 16, 1967, did constitute adoption of an inconsistent position; but the position was one actively maintained by the plaintiffs and not by the Commissioner. It is the plaintiffs who are here relying on the mitigation provisions to open a closed year. Plaintiffs cannot originate and actively assert an inconsistent position and then use that position to extricate themselves from the defense of Statute of Limitations merely because the Commissioner passively accedes to plaintiffs' assertions. While it is true that the Internal Revenue Service initiated an audit in this case, the shifting of income was an issue raised and urged by the taxpayers. Whether as plaintiffs assert the Commissioner is somehow mandated to carry through the adjustments made to the partnership return to these particular partners is not the issue. The issue is whether the Commissioner, assuming he does carry through the adjustments, has maintained an inconsistent position.

This court in Heineman v. United States, 391 F.2d 648, 651–652, 183 Ct.Cl. 17, 22–23 (1968), well discussed the purpose of the mitigation provisions and the active maintenance requirement of section 1311(b)(1). The court stated:

Stated another way, the mitigation provisions do not prevent the Commissioner from pleading the statute of limitations because the Commissioner was not the party who maintained the inconsistent position. Taxpayers, however, contend that since the Commissioner did allow the 1954 refund claim, this in itself is enough to constitute the maintenance by the Commissioner of a position inconsistent with the position taken in prior years with respect to *Mokan* distributions. This contention misconstrues the nature of the inconsistent position requirement of section 1311(b)(1). One does not "maintain" a position, in the ordinary sense of that phrase, merely by accepting a contention or position originated and actively asserted by an opposing party. In order for section 1311(b)(1) to apply, defendant, as the party relying upon the bar of the statute of limitations, must be the *active* party in maintaining the position, not merely a passive party acceding to a position actively maintained by taxpayers. As this court said in Karpe v. United States, 335 F.2d 454, 461, 167 Ct.Cl. 280, 292 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 655, 13 L.Ed.2d 558 (1965):

* * * [T]he requirement of section 1311(b)(1) is that the determination adopt a position inconsistent with the *error* and that this position must have been actively maintained by the party seeking to interpose the bar of the statute of limitations. [Footnotes omitted.] * *

See also Commissioner of Internal Revenue v. Weinreich's Estate, 316 F.2d 97, 105 (9th Cir. 1963), which held that the mitigation provisions only apply in the case of "active inconsistency" by the party pleading the bar of the statute of limitations.

The legislative history of the bill enacting the mitigation sections confirms the fact that the statute requires active urging of a position by a party when it speaks of a "position maintained by" a party. The Senate Report noted that adjustments under the mitigation sections would never modify the application of the statute of limitations "except when the party or parties in whose favor * * * [the

statute of limitations] applies shall have justified such modification *by active inconsistency* * * *." S. Rep.No.1567, 75th Cong., 3d Sess. 49 (1938).

The reasoning in *Heineman* is sound and it carries out the intent of Congress. The legislative history referred to in the opinion is clear support for the court's decision.

Plaintiffs rely on Gant v. United States, 441 F.2d 1130, 1131 (5th Cir. 1971), in which the court stated:

> * * * We agree with the district court: "this Court does not believe that recovery in this type of situation should turn on the technicality of who discovered the error".

The court summarily in a per curiam disposition followed the District Court without even a mention of the legislative background of the mitigation sections. We differ and do not agree with *Gant*. Laws, such as income tax laws, should be construed "in harmony with the legislative intent and seek to carry out legislative purpose." Foster v. United States, 303 U.S. 118, 120, 58 S.Ct. 424, 425, 82 L.Ed. 700 (1938). Clearly, the legislative intent in enacting the mitigation provisions was to release the bar of the statute of limitations only when the party attempting to hold the bar has actively maintained the inconsistent position.

Plaintiffs in this case claim that Moultrie Cotton Mills v. United States, 151 F.Supp. 482, 138 Ct.Cl. 208 (1957), is in their favor. Plaintiffs in *Heineman* also argued that *Moultrie* was in their favor. This court in *Heineman* distinguished *Moultrie* as follows:

> Despite the broad language used in *Moultrie*, that case is distinguishable on its facts and *should be limited to its facts*. [Emphasis not in text.] For, in *Moultrie*, it was the *Government's own regulations* which required the taxpayer to go back and recompute its inventories for the years 1941 through 1947. * * * [391 F.2d at 653, 183 Ct.Cl. at 26.]

United States v. Rachal, 312 F.2d 376 (5th Cir. 1962), cited by plaintiffs, may be differentiated from this case. In *Rachal* the Internal Revenue Service, after an audit which made changes in the taxpayer's costs and inventories, assessed deficiencies for 1948 and 1949. These deficiencies were paid in 1952. In 1953 the taxpayer filed claims for refund. The Internal Revenue Service then conducted another examination (this time for the years 1948 through 1952). In a report dated in 1954, the revenue agent recommended downward adjustments in the costs and inventories. A refund was made for the years 1948 and 1949 of the taxes paid pursuant to the additional assessment which followed the first audit. However, the Internal Revenue Service, relying on the statute of limitations, refused to refund the overpayments made when the returns for 1948 and 1949 were originally filed. It is clear that the second examination was conducted and the report rendered after the statute of limitations had run for 1948 and 1949 (except for those assessments paid in 1952). It is also clear that the Commissioner projected his changed position to all open years through 1952. The court thus concluded:

> * * * The Commissioner argues that the inconsistency does not apply, because both positions of the Commissioner relate to the same years 1948 and 1949 and that 3801 [the predecessor of 1311] requires inconsistency between the open years of determination and the closed year in which the item was erroneously included in income. But the effects flowed to an open year. It is fundamental that to change closing inventory of 1948 and 1949 also changes the beginning inventory for 1950 (an open year) and any later year similarly changed (here 1950 through 1952). * * * [312 F.2d at 382.]

In *Rachal* the Commissioner in the initial and subsequent examinations recommended adjustments in the costs and inventories. These adjustments flowed through to later years and resulted in

double taxation of an item of income. The Commissioner was clearly the active party in *Rachal*.

■ Plaintiffs have argued that it was the Commissioner who conducted the audit so he should be considered the active party. Such a generalized argument gets plaintiffs nowhere. Certainly it cannot be the case that everytime the Government initiates an audit, the final results of that audit will automatically be taken as positions "maintained" by the Commissioner.[4] Plaintiffs overlook the basic principle of item by item analysis required by sections 1311–1315. The only item we are concerned with in this case is the shifting of cost of sales from 1962 to 1961. As to this particular issue, the position was one raised and maintained by the taxpayers.

We therefore conclude that defendant's motion for summary judgment is properly taken and it is allowed. Plaintiffs' motion for summary judgment is denied. The petition is hereby dismissed.

DAVIS, Judge (concurring):

While agreeing with the court's analysis and application of the mitigation provisions—which I join—I sketch an additional, narrower ground supporting the same result. As the court points out, "The increase in income for 1962 generated by plaintiffs' respective shares of the $44,302 cost of sales adjustment would not have affected plaintiffs' refund claims for 1962." Both parties stated at the oral argument that, because of substantial losses, taxpayers' refund claims for 1962 would have been granted in precisely the same amount even if there had never been an adjustment in Western Equipment's sales costs. It necessarily follows that, with respect to the present plaintiffs, that adjustment, when made for 1962, was wholly inoperative and irrelevant to the action taken by the Internal Revenue Service for that year. As to those suitors the adjustment was at most *obiter dictum* for 1962; it had no operative impact at all. So far as the plaintiffs were concerned, the Service, when it received their 1962 refund claims, need not have gone in any way into the problem of cost of sales; it could dispose of the claims in their favor without touching on, or considering, that subject.[1] Yet it is the Service's adjustment in Western Equipment's sales cost for 1962 on which plaintiffs rely, and must rely, to invoke the mitigation remedy.

As I understand this segment of the Code (26 U.S.C. §§ 1311–1314), a "determination", to trigger mitigation, must, at least in these circumstances, be operative and actual with respect to the suing taxpayer for the year involved, and not simply a Service declaration of position which is wholly academic for that year. The first six subdivisions of section 1312 ("Circumstances of adjustment") refer to situations in which the "determination" "requires" or "allows" or "disallows"—language which implies an actual, operative effect; the last subparagraph relates to a "determination" which "determines the basis of property", and again suggests that this finding must have an actual impact for the year made. In addition, in defining "determination" to include a refund, section 1313(a)(3) speaks of the "items" "allowed" or "disallowed", thus once more focusing on actual effect. The same concept underlies section 1313(c), defining "related taxpayer", which uses the terms, "the taxpayer with respect to whom a determination is made." And the legislative history implies that maintenance of the inconsistent position must have some real

---

4. In this respect see Legislation, Section 820: Equity in the Administration of the Revenue Act, 39 Colum.L.Rev. 460, 477–478 (1939):

"* * * Proceedings preliminary to the determination, such as a claim for refund, assessment of deficiency, or petition to the Board of Tax Appeals will usually indicate the position maintained,

and the determination may contain evidence of that position. * * * [Footnote omitted.]"

1. This was apparently not true as to other partners in Western Equipment Company, not now before us, and that seems to be the reason the Service delved into the matter.

bite when it refers to taking "the profit out of inconsistency." *See* Birchenough v. United States, 410 F.2d 1247, 1250, 187 Ct.Cl. 702, 707 (1969). A Service determination in the air, an advisory opinion without present impact, would not be enough—but in substance that is what occurred here with respect to plaintiffs.

The IRS position does appear to have been operative for 1962 for the partners not now suing, but I do not think this makes a difference as to plaintiffs, even though those other individuals were "related taxpayers" (*See* § 1313(c)(6)). Section 1312(1) ("Double inclusion of an item of gross income"), which plaintiffs invoke, seems to me to "*require*[s]" (emphasis added) the inclusion in the *taxpayer's* gross income for the year involved (1962) of an item erroneously included for another year (1961) in the taxpayer's gross income or in the gross income of a related taxpayer. The first part of this condition was not met by the plaintiffs, though it may have been fulfilled as to their non-suing partners.