**F.W. BOELTER CO., INC.**

**v.**

**The UNITED STATES.**

**No. 369–85T.**

United States Claims Court.

April 2, 1987.

Eugene O. Duffy, Milwaukee, Wis., attorney of record for plaintiff. F. Joseph Schlosser and Lori A. Simpson, of counsel.

Mildred L. Seidman, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant.

### OPINION

YOCK, Judge.

This tax refund suit is before the Court on cross-motions for summary judgment. Plaintiff, F.W. Boelter Co., Inc., seeks to recover overpayment of $41,216 plus interest, paid as a result of errors made by plaintiff in the calculation of its LIFO inventory values. Defendant allowed a refund of the overpayments for plaintiff's tax years 1977 and 1979 through 1981. Plaintiff's administrative claim requests for tax years 1975, 1976 and 1978 were refused by defendant as barred by the statute of limitations. Plaintiff asserts that the mitigation provisions of the Internal Revenue Code (IRC or Code), 26 U.S.C. §§ 1311–14 (1976) are applicable, and therefore, the statute of limitations should not bar recovery. Defendant contends that the mitigation provisions are inapplicable under the facts of this action; thus, plaintiff's action is time barred. Also, defendant by counterclaim asserts that the refund paid to the plaintiff for tax year 1977, approximately $7,360, was refunded erroneously by the Government because plaintiff's

claim for refund was filed beyond the applicable statute of limitations period.

For the reasons discussed herein, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. Judgment is also granted on defendant's counterclaim for $7,361.66 plus interest, representing the amount erroneously refunded to plaintiff.

*Facts*

The plaintiff corporation is a wholesale distributor of food service supplies and equipment and is located in Milwaukee, Wisconsin. Plaintiff is an accrual basis taxpayer and uses a fiscal year ending February 28, (February 29 in leap years), as its accounting period. The years in issue in this action are plaintiff's 1975 through 1978 tax years.

Plaintiff filed an application to use the Last In First Out, or LIFO,[1] inventory method (Form 970) with its federal income tax return for the year ended February 25, 1975. In its Form 970 application, plaintiff elected the link-chain method[2] of calculating LIFO inventories. The Form 970 application was accepted by the Internal Revenue Service (IRS), and plaintiff consistently valued its inventories under this method for its tax year ended February 28, 1975 and all subsequent tax years.

During a 1982 internal company audit, the plaintiff's former accounting firm discovered that they had improperly computed the value of plaintiff's inventories for 1975 through 1981 by applying the annual instead of the cumulative index to each layer of inventory. These errors resulted in higher inventory values than the proper computation would have produced. Because the ending inventory of one year becomes the beginning inventory of the next year, the errors were compounded for each year subsequent to 1975. The net effect of the overvaluation of the inventory was to understate the cost-of-goods-sold value for each year at issue. This understatement produced a corresponding overstatement of gross income, taxable income and income taxes due for each of plaintiff's tax years ended 1975 through 1981.[3]

Plaintiff corrected the computational errors in its LIFO inventories for the tax years 1975 through 1981, and filed with the Internal Revenue Service amended corporate income tax returns for its 1979, 1980 and 1981 tax years. These amended re-

---

1. The LIFO inventory accounting method allows the matching of the current sales price of goods against the seller's current cost of replacing those goods in inventory. This is achieved by indulging in the fiction that the last goods added to the seller's inventory are the first to be sold. The effect of this fiction is to defer income, and the income tax thereon, during periods of rising prices and constant or expanding inventory levels. When inventories contract, however, the earlier purchased and presumably lower priced inventory layer is eroded and the deferral ceases.

2. In its Statement in Support of Form 970, plaintiff described the link-chain method as follows:

"1. The year-end quantity of each item is priced at the cost of that item at the end of the preceding year and at the end of the current year. A dollar total of these amounts is then determined;

"2. The dollar total at current year's cost is divided by the dollar total at preceding year's costs to determine the current year index of cost change;

"3. The current year index of costs change is multiplied by the cumulative index of cost change for all prior years (during which LIFO has been used) to determine the cumlative index at the end of the current year;

"4. The total dollar amount of inventory at the end of the current year, priced at current costs, is divided by the cumulative index at the end of the current year to determine the base year costs;

"5. The base year cost of the inventory at the end of the preceding year is subtracted from the current year's inventory at the base year cost to determine the current year's increment (or liquidation) at base year costs;

"6. The current year's increment is valued at average cost of purchases during the year to determine the LIFO value of the current year's increment. This increment of 'Layer' is then added to the LIFO inventory at the end of the preceding year to determine the total LIFO inventory at the end of the current year."

3. If inventory levels remain the same or decrease, the effect of an inventory valuation error on income is counterbalanced to some extent in the next year. However, because plaintiff's inventory levels increased throughout the time frame at issue, the counterbalancing effect did not occur and the overstatement of income continued.

turns reflected the correct amount of gross income and taxable income for those years. After completion of a confirming audit, the IRS accepted the amended returns for those tax years on February 17, 1983, and refunds in the full amounts shown on the amended returns were received by plaintiff on April 18, 1983.

On May 16, 1983, plaintiff then filed amended corporate income tax returns for its 1975 through 1978 tax years for income taxes erroneously paid.[4] The claims for refund were assigned to a revenue agent who reviewed the computations and refused to allow adjustments for 1975 through 1978 because those years were closed by the statute of limitations. The IRS formally denied plaintiff's claims for refund for its 1975, 1976, and 1978 tax years in June 1983. Notwithstanding the revenue agent's determination, plaintiff's claim for refund for its 1977 tax year was allowed in full by the IRS on August 29, 1983. Defendant asserts that this refund was erroneously made and has counterclaimed for this amount plus interest in this action.

Prior to the institution of this suit, plaintiff pursued a malpractice claim against the accounting firm that made the errors in the original inventory valuation. Settlement for an amount approximately equal to the overpayments of taxes during the years in issue, plus interest to that date was received by plaintiff and reported as taxable income.

Plaintiff brought suit in this Court on June 21, 1985.

### Discussion

Plaintiff contends that the allowance of refund claims for the plaintiff's 1979, 1980 and 1981 tax years constituted an IRS determination that the computational corrections made to the LIFO inventory valuations for these then open years were proper. Since the IRS rejected the corrections of the inventory computations for the plain-

tiff's tax years 1975 through 1978 as barred by the statute of limitations, plaintiff asserts that defendant has actively maintained an inconsistent position, and has used the statute of limitations as an offensive weapon to prevent correction of the closed years inventory values. Plaintiff also argues that defendant's own regulations required the plaintiff to recompute the inventory values for the closed tax years in issue and thus the plaintiff should be allowed the refunds for those closed years as claimed. In addition, the plaintiff complains that unless it is allowed a refund of its 1975, 1976, and 1978 overpayment of taxes, that it will have been subjected to double taxation for the years from 1982 to the present. For these reasons, plaintiff claims application of the mitigation provisions, set forth at 26 U.S.C. §§ 1311–14 (1982), is required.

Defendant counters the plaintiff's arguments in regard to the plaintiff's taxable years 1975, 1976, and 1978, by asserting basically two points. First and foremost, the Government contends that the mitigation provisions do not apply in the factual situation at issue here because the Government has not actively maintained an inconsistent position. Therefore, the statute of limitations is not being used by the Government as an offensive weapon against the plaintiff. Second, the Government argues that the IRS regulations dealing with the inventory calculations do not impact on the mitigation provisions in the way the plaintiff argues that they do.

Additionally, in regard to plaintiff's taxable year 1977, the defendant argues that the plaintiff was not entitled to receive a refund, and the refund it did receive was erroneously made. Thus, the Government is entitled, pursuant to authority contained in 26 U.S.C. § 6532(b) (1982) to recover its erroneously made refund for 1977, as detailed in its counterclaim.

It is conceded by both parties that unless the mitigation provisions are for applica-

---

**4.** Plaintiff filed its original, erroneous income tax returns and paid the income tax due on or before August 15, 1975, August 15, 1976, May 15, 1977, and May 15, 1978 for the tax years at issue. The amended returns showed refunds due plaintiff in the amounts of $511, $29,763, $4,201, and $10,942 for the tax years 1975 through 1978, respectively.

tion, the statute of limitations bars the plaintiff's claim in this case. Section 6511 of the Code provides that a "[c]laim for credit or refund of an overpayment of * * * tax * * * shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later." 26 U.S.C. § 6511(a) (1982). Plaintiff did not file for refunds prior to the expiration of the limitation period. Plaintiff filed its return for the year which ended February 1978, on or before May 15, 1978. Because plaintiff did not file an amended return for this year or claim a refund until May 5, 1983, the three-year statute of limitations bars the action. Obviously, since the limitation period would have expired earlier for the years prior to 1978, the refund claims for 1975 through 1977 are also barred.

However, if certain requirements are met, the so-called mitigation provisions, section 1311 through 1314 of the Code, permit correction under the limited circumstances specified therein, of certain types of errors even though the errors occurred in years that are closed by the statute of limitations. For the mitigation provisions to apply to the instant case, the plaintiff must prove four things. First, there has to be a determination made by the IRS with respect to the treatment of an item of income, indicating that the treatment of the same item of income in an earlier year was incorrect. Second, on the date of the determination, correction of the effect of the error in the prior year is barred by the operation of some law, such as the statute of limitations. Third, the IRS must have been successful in actively maintaining an inconsistent position which resulted in that determination. Fourth, and finally, the effect of the treatment of the item of income by reason of the determination would be double inclusion of that item of income. If all of these requirements are met, then the correction of the error in the barred year is permitted by appropriate adjustment pursuant to the mitigation provisions of the Code. *Heineman v. United States*, 183 Ct.Cl. 17, 21, 391 F.2d 648, 651 (1968).

This Court holds that the plaintiff's claim does not fall within the authority of sections 1311–14 of the Code because there has been no inconsistent position actively maintained by the IRS in this matter. Under the language of section 1311(b)(1), which covers this requirement, a taxpayer can obtain an adjustment for a closed year only if—"there is adopted in the determination a position maintained by the Secretary * * * and the position maintained by the Secretary * * * is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be." Although the plaintiff has met the other three requirements of the mitigation provisions, the determination at issue did not adopt a position actively maintained by the Commissioner. In addition, the Court does not agree with the plaintiff's regulations argument.

The purpose behind the mitigation provisions were perhaps best explained by the Court of Claims in its *Heineman* decision. In that decision, the court stated:

The legislative history of the bill enacting the mitigation sections confirms the fact that the statute requires active urging of a position by a party when it speaks of a "position maintained by" a party. The Senate Report noted that adjustments under the mitigation sections would never modify the application of the statute of limitations "except when the party or parties in whose favor * * * [the statute of limitations] applies shall have justified such modification *by active inconsistency* * * *." [Emphasis supplied.] S.Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938).

The following comment of the Harvard Law Review is also relevant to our conclusion that maintaining a position under the mitigation provisions means actively urging the adoption of a position:

* * * [Corrections under the mitigation provisions] are purely compensatory in that they balance a correct result obtained by an *active party* in an open year with a correction of an error for the benefit of the *passive party* for the closed year. * * * [Emphasis sup-

plied.] *Sections 1311–15 of the Internal Revenue Code: Some Problems in Administration*, 72 Harv.L.Rev. 1536, 1541 (1958–59).

This interpretation of the inconsistent position requirement is in full accord with the recognized purpose of the mitigation provisions. The Senate Report amply demonstrates that the mitigation provisions were enacted primarily to prevent either the Commissioner or the taxpayer from gaining the advantage of double taxation or double tax avoidance by the offensive use of the statute of limitations. Particularly pertinent is the following language of the Senate Report:

> * * * [U]nder existing law, an unfair benefit * * * [can] be obtained by assuming an inconsistent position and then taking shelter behind the protective barrier of the statute of limitations. * * * [The statute of limitations] was never intended to sanction active exploitation, by the beneficiary of the statutory bar, of opportunities only open to him if he assumes a position diametrically opposed to that taken prior to th running of the statute. * * * Legislation has long been needed to * * * check the growing volume of litigation by taking the profit out of inconsistency * * *. [S.Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938).]

Thus, the inequity which the mitigation provisions were intended to rectify only exists where a party attempts to exploit the statute of limitations by taking the initiative and actively assuming a position inconsistent with the treatment of the same item in a prior year closed by the statute of limitations. In the instant case, it is indisputable that the Commissioner was attempting no such offensive use of the statute of limitations. The Commissioner was at all times the passive party—allowing taxpayers the refund they requested for 1954, but denying similar refund claims for years closed by the statute of limitations.

*Heineman v. United States, supra,* 183 Ct.Cl. at 23–24, 391 F.2d at 652.

In the instant case, plaintiff notes that the Treasury regulations require the method of valuing inventory increments be "consistently adhered to in all subsequent tax years so long as the LIFO inventory method is used by the taxpayer." 26 C.F.R. § 1.472–2(a). *See also* 26 C.F.R. § 1.472–8(e). Boelter urges the Court to find that the foregoing regulations, coupled with the IRS's allowance of refund claims for the years 1979 through 1981, constitute a determination that resulted in the double inclusion of an item of income [5] and represents an actively maintained, inconsistent position.

In support of this position, the plaintiff relies almost exclusively on the case of *Moultrie Cotton Mills v. United States,* 138 Ct.Cl. 208, 151 F.Supp. 482 (1957). In *Moultrie,* the court held that the Commissioner maintained an inconsistent position when an inventory value recomputation resulted in overpayments in both open and closed years and the Commissioner allowed the refunds for the open, but not the closed years.

In 1941, the taxpayer in *Moultrie* elected to use the LIFO inventory method to value its raw materials. Finished goods and goods in process were to continue to be valued at the lower of cost or market. In 1948, the taxpayer again notified the IRS that it intended to elect the LIFO method for all of its inventories, and not just the raw materials. The Treasury regulations at that point in time required the taxpayer to recompute the value of the finished goods and goods in process inventories under the LIFO method from 1941, the date of its first LIFO election. The court held that because the Government's own regula-

---

**5.** In periods of rising prices or increasing levels of inventory, the use of the LIFO method results in a deferral of income. Due to its computational errors, plaintiff's taxable income and income tax liability were overstated in the closed years; therefore, the benefit of deferral was not received. Plaintiff claims that it is now being taxed twice because due to general inventory price or quantity decreases that have resulted subsequent to the years at issue in this case, it is forced to recognize "deferral income" that, due to its computational errors, was never actually deferred.

tions required the retroactive recomputation of the inventories governed by the new election, the Commissioner had maintained an inconsistent position in allowing refunds in the open years but not in the closed years.

Unfortunately for the plaintiff, however, the factual situation presented in *Moultrie* does not exist in the instant case. The plaintiff did not make an election to change inventory methods in the year claims for refund were filed as did the plaintiff in *Moultrie*. Also, the regulations applicable in *Moultrie* specifically required the plaintiff "to go back and recompute its inventories for the years 1941 to 1947 inclusive." *Moultrie, supra,* 138 Ct.Cl. at 211, 151 F.Supp. at 483. The regulations relied upon by plaintiff in this case merely state that the method chosen for its inventory computations must be consistently applied. The regulations do not mandate retroactive recomputations. *See* 26 C.F.R. §§ 1.472–2(a), 1.472–8(e) (1982). To require that inventories be valued correctly and consistently is no different than requiring that they be reported properly and without mistake in the first instance. The same requirement applies to all items reported on federal tax returns. If an error is made, it can be corrected unless the year is closed by the statute of limitations. If the year is closed, it cannot be reopened merely because an item that was required to be properly reported was not. Indeed, as the Court of Claims said in *Brigham v. United States,* 200 Ct.Cl. 68, 78 n. 5, 470 F.2d 571, 576 n. 5 (1972), *cert. denied,* 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973):

> [N]ot all cases dealing with inventory adjustments are subject to the mitigation provisions of sections 1311 through 1315. Inventory cases are also subject to the prerequisite that the party relying on the statute of limitations must be the one who has maintained the inconsistent position.

Thus, this Court does not agree with the plaintiff's position in regard to the regulations at issue here.

Additionally, however, and perhaps more critically on point, plaintiff has failed to convince this Court that it suffered inconsistent treatment due to a position *actively maintained* by the IRS. In this case, the plaintiff discovered the error in its own inventory accounts. It then made the appropriate corrections and filed claims for refund for the open years. After receiving the refunds for the open years, the plaintiff then filed claims for the closed years and is now claiming that the Commissioner is trying to use the statute of limitations as an offensive weapon in denying refunds for the closed years.

Plaintiff was the active party in this instance, not the IRS. The IRS merely verified the accuracy of the plaintiff's recomputations and allowed refunds for the open years. The plaintiff "cannot originate and actively assert an inconsistent position and then use that position to extricate [itself] from the defense of the statute of limitations merely because the Commissioner passively accedes to plaintiff['s] assertions." *Glatt v. United States,* 200 Ct.Cl. 84, 91–92, 470 F.2d 596, 601 (1972). That a position is not "actively maintained" simply by accepting a contention or position originated and actively asserted by an opposing party is well settled. *See Glatt, supra; Brigham, supra; Heineman, supra.* An "active" position exists only where the party asserting the statute of limitations took the initiative and actively assumed a position inconsistent with the treatment of the same item in a prior year. *Heineman, supra,* 183 Ct.Cl. at 22–23, 391 F.2d at 651. No such active position was taken by the Government in this case. The IRS in this case merely agreed with the plaintiff that a computational error pertaining to its LIFO inventory had been made starting in 1975. Thus, the Government merely allowed the plaintiff to correct its own error as to those tax years that were still open and not barred by the three-year statute of limitations. This case is controlled by the holdings enunciated by the United States Court of Claims in *Heineman, supra; Glatt, supra;* and *Brigham, supra.* It is not controlled by the Court of Claims decision in *Moultrie, supra.*

Moreover, the precedential value of the *Moultrie* case has been sharply curtailed

by the above decided cases. For instance, in *Heineman,* the court stated:

> Despite the broad language used in *Moultrie,* that case is distinguishable on its facts and should be limited to its facts. For, in *Moultrie,* it was the *Government's own regulations* which required the taxpayer to go back and recompute its inventories for the years 1941 through 1947. This resulted in double taxation, since the adjustments resulted in a deficiency for 1947, which taxpayer had to pay, and overpayments for certain other years, which the taxpayer could not collect because of the statute of limitations. Thus, *Moultrie* stands for the proposition that allowance of a refund in open years is a position maintained by the Commissioner inconsistent with the refusal to allow a refund for closed years only in the narrow type of situation existing in that case. Obviously, no such situation exists in the instant case.

*Heineman, supra,* 183 Ct.Cl. at 26, 391 F.2d at 653.

Also, in passing it should be noted that the Court of Appeals for the Federal Circuit recently addressed the issue of tax recomputations in *Barenholtz v. United States,* 784 F.2d 375 (Fed.Cir.1986). In upholding the Claims Court's dismissal of the taxpayer's refund suit, the Court stated that "[i]t is well settled that the IRS and the courts may recompute taxable income in a closed year in order to determine tax liability in an open year." *Barenholtz, supra,* 784 F.2d at 380–81. *See also Springfield Street Ry. Co. v. United States,* 160 Ct.Cl. 111, 117–18, 312 F.2d 754, 757–59 (1963). The IRS in the present case did no more. In fact, of course, it was the plaintiff that performed the recomputations. The mitigation provisions are inapplicable to the case at bar.

■ Finally, the Government in this case has counterclaimed for approximately $7,361.66 plus interest, claiming that this amount, which represents plaintiff's 1977 refund claim, was erroneously paid. Plaintiff's original 1977 tax return was filed in 1977. Because the amended return and claim for refund were not filed by it until May 5, 1983, the three year statute of limitations bars recovery. The Government contends that the payment to Boelter of a refund for its 1977 tax year constitutes an erroneous refund as defined by 26 U.S.C. § 6514 (1982). The defendant further asserts that it is entitled to recover its erroneous payment pursuant to 26 U.S.C. § 6532(b) (1982). This Court agrees.

Section 6532(b) provides that recovery of an erroneous refund is allowed if such suit is begun within two years after the refund is made. Here the IRS erroneously paid plaintiff's refund claim on August 29, 1983. Although the defendant did not itself initiate a law suit to recover the erroneous refund, it filed a counterclaim along with its answer on August 20, 1985. Since the claim was filed within two years of the refund and because this Court believes that the refund was erroneous, defendant prevails on its counterclaim.

### CONCLUSION

For the reasons discussed herein, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Government's counterclaim for the erroneous refund for the year 1977 is also allowed. Accordingly, the parties are allowed 20 days in which to arrive at a stipulation of the proper amount due under the counterclaim or otherwise to advise the Court of their intentions herein.

Upon the entry of judgment, each party will bear its own costs.