**SARA LEE CORPORATION AND SUBSIDIARIES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–1720T.**

United States Court of Federal Claims.

Sept. 16, 1993.

Joel V. Williamson, Chicago, IL, and Kim Marie Boylan, Washington, DC, for plaintiff. Roger J. Jones, Mayer, Brown & Platt; and Arthur S. Rollin, Skadden, Arps, Slate, Meagher & Flom, of counsel.

David Gustafson, Washington, DC, with whom was Acting Asst. Atty. Gen. Michael L. Paup, for defendant.

## *OPINION*

NETTESHEIM, Judge.

This case is before the court on plaintiff's motion for partial summary judgment pursuant to RCFC 56 with respect to Count I of plaintiff's First Amended Complaint. The issue presented is whether, in a tax refund suit, a Revenue Agent's Report (an "RAR") reflecting an overpayment on taxpayer's behalf creates a presumption, which, if not rebutted, satisfies the taxpayer's burden of going forward and thereby entitles the taxpayer to the claimed refund as a matter of law.

### FACTS

The following facts are undisputed, unless otherwise indicated. In March 1988 Sara Lee Corporation ("plaintiff") filed a return for the taxable year ending on June 27, 1987, and paid the requisite self-assessed tax liability for that year in the amount of $67,054,078.00. On or about October 11, 1988, the Internal Revenue Service (the "IRS") initiated an audit of plaintiff's taxable years ending June 27, 1985; June 28, 1986; and June 27, 1987,[1] as part of a three-year audit cycle. Fifteen IRS employees worked on the audit on a regular basis for approximately three years, evaluating plaintiff's headquarter's operations and performing on-site audits of plaintiff's subsidiaries located throughout the country.

The audit disclosed a number of deficiencies for the three-year audit cycle, in particular with regard to taxable years 1985 and 1986. The IRS outlined these deficiencies, as well as certain favorable adjustments, in two separate RARs prepared by Internal Revenue Agent Talbert Little ("Agent Little"), Team Coordinator for plaintiff's au-

---

**1.** Plaintiff's proposed findings of uncontroverted fact filed on March 26, 1993, indicate that the 1987 taxable year ended on June 29.

dit. One RAR covered the 1985–1986 taxable years and one covered 1987. The IRS forwarded a Form 5701, Notice of Proposed Adjustment, to plaintiff for each of the adjustments specified in the two RARs. Plaintiff claims that it signed the forms indicating it "agreed" with every adjustment proposed, with the exception of one issue.[2] By signing each form, plaintiff contends that it further agreed to pay any deficiencies due and to postpone any deductions to 1987 and beyond.[3]

On July 8, 1991, plaintiff paid the deficiencies for 1985 and 1986.[4] Many of these adverse adjustments, or deficiencies, resulted in favorable adjustments, or "rollover adjustments," for 1987. The 1987 RAR dated October 24, 1991, shows that the favorable adjustments to plaintiff's 1987 tax liability, if allowed, would result in an overpayment in the amount of $11,779,-192.00, exclusive of interest.[5] This overpayment forms the basis of plaintiff's complaint.

Despite the apparent $11 million overpayment reflected on the face of the RAR, the IRS never processed any such refund. The IRS also neither issued a notice of deficiency, nor made any tax assessments for the taxable year 1987. Moreover, plaintiff and the IRS did not sign a Form 870 or Form

870–AD[6] concerning the 1987 tax liability or enter into any closing agreement or compromise. See 26 U.S.C. §§ 7121, 7122 (1988). Plaintiff also failed to request that the IRS issue a ruling or provide "technical advice" regarding the taxable year at issue. See 26 C.F.R. §§ 601.201(a)(2), 601.-106(f)(9) (1992). Finally, the IRS did not report the alleged refund claim to the United States Congress' Joint Committee on Taxation, an action which is required for all refunds in excess of $1 million. See 26 U.S.C. § 6405(a) (West Supp.1991).

The IRS, however, did initiate discussions with plaintiff regarding a possible means to expedite the refunding of the alleged overpayment.[7] See Affidavit of Talbert Little dated May 10, 1993, ¶ 4. According to Agent Little, on the date the RAR was issued, i.e., October 24, 1991, the IRS offered to process the refund of $11,-779,192.00 despite the outstanding issue concerning the Alaska Native Corporations (the "ANC issue"). See supra notes 2, 4. The IRS extended this offer on the condition that plaintiff agree to an extension of the statute of limitations on the adjustments. Such an extension was necessary to ensure that the Joint Committee on Taxation could properly evaluate the proposed

2. This issue concerns whether or not plaintiff is entitled to a refund with regard to income earned by corporations which are not members of plaintiff's affiliated group, but, instead, are members of the affiliated groups of certain Alaska Native Corporations (the "ANC issue"). The ANC issue is not the subject of plaintiff's motion for partial summary judgment.

3. Plaintiff, however, does not dispute its continued entitlement to file refund suits challenging the validity of the paid, "agreed," adverse adjustments for taxable years 1985 and 1986.

4. Plaintiff contends that it paid the deficiencies, as opposed to having the IRS net them against the 1987 overpayment, because the IRS had refused to engage in such a netting process. The IRS contests this characterization, relying primarily on the Affidavit of Talbert Little dated May 10, 1993. Agent Little avers that the IRS represented to plaintiff that netting was inappropriate at the time of their discussions because the 1987 audit had not yet been completed and the adverse adjustment relating to the ANC issue, at that date, exceeded the amount of any favorable rollovers.

5. The 1987 RAR includes both favorable and unfavorable adjustments. The IRS raises the adverse adjustments as offsets.

6. Forms 870 and 870–AD are the general forms the IRS *utilizes for settlement negotiations.* Several courts have held that a properly executed Form 870–AD, entitled Offer of Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and of Acceptance of Overassessment, precludes a taxpayer from litigating as to the merits of the refund claims addressed therein. *Stair v. United States,* 516 F.2d 560, 565 (2d Cir.1975); *General Split Corp. v. United States,* 500 F.2d 998, 1003–04 (7th Cir.1974); *Kretchmar v. United States,* 9 Cl.Ct. 191, 197 (1985).

7. The remarks of Agent Little directly contradict those made by Donald Meier, Vice President of Taxes for Sara Lee, in his affidavit dated March 24, 1993. According to Mr. Meier, the IRS refused to process the refund until such time as the parties had resolved the ANC issue.

refund. Plaintiff disagreed with the contingency and therefore rejected the offer, electing instead to file a refund claim.

On October 30, 1991, plaintiff submitted a claim for refund on Form 1120X for taxable year 1987 requesting a refund of $28,842,483.00.[8] The form provides for a decrease in taxable income for 1987 in the amount of $56,972,982.00; this amount consists of approximately 170 individual favorable adjustments. A memorandum dated October 30, 1991, attached to Form 1120X, "request[ed]" that the refund claim be immediately rejected pursuant to Internal Revenue News Release IR–1600" (Apr. 26, 1976) ("IR–1600"). On November 29, 1991, the IRS agreed to plaintiff's request and issued a letter of disallowance.

Plaintiff initially filed a complaint with the United States Claims Court on December 31, 1991, requesting payment of its claimed refund. On May 15, 1992, defendant served plaintiff with several discovery requests pertaining to the 170 favorable adjustments underlying the claimed refund. In response to interrogatories, plaintiff relied on the RAR to substantiate its claimed refund. Seeking further substantiation, defendant moved to compel discovery, which the prior judge denied on March 12, 1993. Defendant, in an effort to obtain

information concerning the adjustments at issue, also requested, pursuant to internal office procedures, the files pertaining to plaintiff's taxable years of 1985 and 1986. In a letter dated May 7, 1993, the IRS Field Service Division informed defense counsel that the requested files had not, as of that date, been located.[9]

On March 26, 1993, plaintiff filed its amended and substituted motion for partial summary judgment with respect to Count I of Plaintiff's First Amended Complaint, requesting judgment as a matter of law as to the "Minimum Refund" issue.[10] Plf's Br. filed Mar. 26, 1993, at 1. Plaintiff's motion is predicated on the contention that the 1987 RAR creates a presumption,[11] which, if not rebutted by defendant by way of offsets, satisfies plaintiff's initial burden of going forward, thereby entitling plaintiff to its "Minimum Refund" as a matter of law.

## DISCUSSION

Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RCFC 56(c). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing

---

8. This figure includes the $14,320,634.00 refund due plaintiff if the ANC issue is resolved in its favor and the $640,059.00 refund associated with the 1990 targeted jobs credit carryback. The latter figure, however, is no longer the subject of litigation. *See* Joint Stipulation of Dismissal in Part, Amendment to the Pleadings and Other Matters, filed Aug. 28, 1992.

9. In his supplemental affidavit, Mr. Meier argues that IRS personnel informed him that the documents supporting all IRS audit adjustments made with respect to plaintiff's taxable years 1982 through 1987, inclusive, remain in the possession of the IRS. According to the affidavit, "all of these files are currently, and have always been, located in the IRS offices on the Seventh Floor of 3 First National Plaza, Chicago, Illinois 60602." Affidavit of Donald Meier dated June 30, 1993, ¶ 36.

10. The Minimum Refund is $13,881,790.00. The 1987 RAR, however, reflects an overpayment of only $11,779,192.00. Plaintiff contends that the amount reflected on the RAR "was net of a $2,742,657 tentative refund made to ... [plaintiff] as a result of certain loss and credit carrybacks, and included the 1990 targeted jobs

credit carryback of $640,059...." Plf's Proposed Finding of Fact ¶ 30, filed Mar. 26, 1993 (citation omitted). Plaintiff paid the tentative refund to the IRS in an effort to "simplify the issues before the [c]ourt." *Id.* ¶ 31. The parties then entered into a joint stipulation wherein plaintiff dismissed the 1990 job credit carryback portion of the refund, *i.e.*, $640,059.00, and plaintiff and defendant agreed that the carryback issues which generated the tentative refund were not at issue in this case. Plaintiff, therefore, asserts that if the dismissal and repayment set forth in the joint stipulation had been considered by Agent Little in the preparation of the RAR, "the 1987 ... [RAR] would have shown" an overpayment of $13,881,790.00, *i.e.*, the Minimum Refund, as opposed to $11,779,192.00 ($13,881,790.00 equals $11,779,192.00 plus $2,742,657.00 minus $640,059.00). *Id.* ¶ 32.

11. Mr. Meier's affidavit indicates that "the agreed adjustments that rolled over from the 1987 RAR were accepted, relied upon, and incorporated in the 1988–1989 RAR...." Meier Aff. dated June 30, 1993, ¶ 33.

law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the parties muster vigorous factual disputes, none is material to the issues that must be resolved on plaintiff's motion.

### 1. The burden of proof in a tax refund suit

■ A tax refund suit is a *de novo* proceeding, in which the plaintiff bears the burden of proof, including both the burden of going forward and the burden of persuasion. *See Helvering v. Taylor,* 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935) (burden of proof); *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 *modified,* 284 U.S. 599, 52 S.Ct. 264, 76 L.Ed. 514 (1932) (burden of proof); *Rockwell v. Commissioner,* 512 F.2d 882, 885 (9th Cir.), *cert. denied,* 423 U.S. 1015, 96 S.Ct. 448, 46 L.Ed.2d 386 (1975) (burden of proof); *George E. Warren Corp. v. United States,* 135 Ct.Cl. 305, 314, 141 F.Supp. 935, 940 (1956) (de novo); *Snap– On Tools, Inc. v. United States,* 26 Cl.Ct. 1045, 1055 (1992) (burden of proof). In such a suit, plaintiff must first rebut the presumption of correctness associated with any determination made by the Commissioner of the Internal Revenue (the "Commissioner"). *United States v. Janis,* 428 U.S. 433, 440–41, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *Helvering,* 293 U.S. at 515, 55 S.Ct. at 290; *Eli Lilly & Co. v. United States,* 178 Ct.Cl. 666, 677, 372 F.2d 990, 997 (1967). Plaintiff then must prove the exact dollar amount of the alleged overpayment to which it claims a refund. *Janis,* 428 U.S. at 440, 96 S.Ct. at 3025; *Missouri Pac. R.R. v. United States,* 168 Ct. Cl. 86, 90, 338 F.2d 668, 671 (1964).

■ In the instant case, the Commissioner disallowed plaintiff's refund request submitted on October 30, 1991, in accordance with plaintiff's request for disallowance pursuant to IR–1600. Defendant argues that the formal action of disallowing plaintiff's refund claim is entitled to the presumption of correctness. Plaintiff disputes this point, noting that the issuance of the disallowance pursuant to IR–1600 [12] does not constitute a determination on the merits. Both IR–1600 and Internal Revenue Manual ("IRM") 4512.1 (Jan. 30, 1987), support plaintiff's position. *See also* F. Burnet & G. Kafka, *Litigation of Federal Tax Controversies,* 13–10 (1992) (pursuant to request under IR–1600, the IRS "will issue a certified notice of claim disallowance ... without reviewing the merits of the claim"). IR–1600, which outlines the special procedure by which taxpayers can expeditiously have cases moved to the court system, specifically states that "[a] taxpayer ..., who does not wish to pursue an appeal within the IRS, should request in writing that the claim be immediately rejected...." IR–1600 further provides that in accordance with such request, the IRS must issue a notice of claim disallowance. IRM 4512, which addresses the preliminary examination of refund claims, provides that in the event the refund claim "is the subject of a request for withdrawal," *i.e.,* an IR–1600 request, the IRS must immediately issue a notice of claim disallowance "and no other action ... [must] be taken." Moreover, "[t]he fact that ... [the Commissioner] called it ... a disallowance does not change the fact that he did not exercise the powers vested in him by law and that he made no decision on the plaintiff's claim...." *Schmitt v. Kavanagh,* 91 F.Supp. 659, 663 (E.D.Mich.1950). These authorities support a ruling that the Commissioner's action in the instant case fails to qualify as a determination entitled to the presumption of correctness.

Plaintiff still bears the burden of establishing the exact dollar amount of the alleged overpayment. Although plaintiff contends that it understands its burden of proof, it premises its motion for partial summary judgment on the notion that the 1987 RAR creates a rebuttable presumption as to plaintiff's tax liability. Because defendant has failed to rebut such presumption by way of offsets, plaintiff claims

---

**12.** The disallowance letter dated November 29, 1991, states: "We have disallowed the claim because you have requested the disallowance per Internal Revenue News Release IR–1600."

entitlement to the Minimum Refund at issue as a matter of law.

### 2. *The minimum refund*

■ Before reaching the ultimate legal issue raised by plaintiff's motion, the discrepancy between the Minimum Refund at issue in this case, *i.e.,* $13,881,790.00, and the amount which appears on the face of the 1987 RAR, *i.e.,* $11,779,192.00, must be addressed. Plaintiff argues that if both dismissal of the carryback refund and repayment of the tentative refund set forth in the joint stipulation had been considered by Agent Little in the preparation of the 1987 RAR, "the 1987 ... [RAR] would have shown" an overpayment of $13,881,-790.00, as opposed to $11,779,192.00. Plf's Br. filed Mar. 26, 1993, at 7. *See supra* note 10. Because this is a tax refund suit, plaintiff bears the burden of proving its entitlement to the Minimum Refund. *Lewis,* 284 U.S. at 283, 52 S.Ct. at 146. Accordingly, plaintiff must produce affirmative evidence to support the entire amount in controversy; here, plaintiff presents only the 1987 RAR, which falls short of the Minimum Refund by about $2 million. Postulating as to what the 1987 RAR "would have shown" does not satisfy plaintiff's ultimate burden of establishing its entitlement to the $2–million discrepancy. As such, the court will address plaintiff's legal theory solely with regard to the overpayment specified on the face of the 1987 RAR, *i.e.,* $11,779,192.00, not the alleged Minimum Refund of over $13 million.

### 3. *Whether an RAR is entitled to any presumption of correctness*

■ In a federal civil proceeding, presumptions come into existence only as a result of either federal statutory or decisional law. *See* 9 Wigmore, *Evidence* § 2493k, at 909 (Supp.1993). Although plaintiff argues that the RAR establishes a presumption, which, if not rebutted by defendant, entitles it to a refund as a matter of law, plaintiff fails to provide sufficient

legal support to substantiate such a proposition.

Plaintiff relies on *Phillips Petroleum Co. v. Commissioner,* 61 T.C.M. (CCH) 2836, 1991 WL 94499 (1991). *Phillips,* a case involving accrual method accounting, held that even though the taxpayer had never affirmatively protested certain adjustments, these adjustments constituted "contingent and contested" adjustments until such time as the taxpayer signed Form 866 and Form 870–AD. Thus, according to *Phillips,* the critical point as to whether an adjustment is contested pursuant to 26 U.S.C. § 461(a) hinges upon the execution of Forms 866 and 870–AD. Defendant erroneously construes *Phillips* to hold "that an (adverse) audit adjustment, once agreed to, is a 'settled' liability...." Def's Br. filed May 13, 1993, at 10 (footnote omitted). Plaintiff seizes upon this mischaracterization and argues that, by analogy, a favorable adjustment, once agreed to, is similarly "settled." As a logical extension of this argument, plaintiff contends that the 1987 RAR, which memorializes the 170 "agreed" favorable adjustments, establishes a rebuttable presumption as to plaintiff's settled tax liability. Plaintiff's argument, nonetheless, must fail in light of the actual holding in *Phillips.*

Unlike *Phillips* the case at bar involves a tax refund issue, not accounting. Moreover, even assuming, *arguendo,* that the logic of *Phillips* is apposite in a tax refund case, plaintiff failed to sign a Form 870–AD [13] or any similar form, which indicates that the 170 favorable audit adjustments underlying plaintiff's refund claim were not "settled." Signing a Form 5701, Notice of Proposed Adjustment, simply does not have the same effect as executing a Form 870–AD. *See* 61 T.C.M. at 2843–44 (plaintiff signed both a Form 5701 and a Form 870–AD; only the latter of which was dispositive).

---

**13.** Form 870–AD reads, as follows: "If this offer is accepted ... [by] the Commissioner, *the case shall not be reopened* in the absence of fraud, malfeasance, ... and *no claim for refund* ...

*shall be filed or prosecuted ... other than for* amounts attributed to *carrybacks* provided by law." *Kretchmar,* 9 Cl.Ct. at 192 (emphasis in original).

In this case the RAR also cannot share the presumption of correctness that federal law normally provides to the Commissioner's determinations because the Commissioner, in accordance with plaintiff's request, neither passed on the merits of plaintiff's refund claim nor spoke as to the RAR's validity. Finally, contrary to plaintiff's contention, the existence of a presumption that public officials properly discharge their duties does not support the notion that the RAR itself is entitled to a presumption. Thus, absent some federal law, the mere fact that plaintiff and the IRS purportedly at one time agreed as to the overpayment appearing on the 1987 RAR does not, by itself, create a presumption as to plaintiff's tax liability.

■ The court also declines to create such a presumption. Although this case is unique and may even be deemed a case of first impression with regard to the issue presented by plaintiff's motion, this factor alone does not warrant creating a presumption. In addition, the nature of the RAR dictates against creating such a presumption. The controlling law holds that absent some final action by the Commissioner, the actions of a revenue agent, such as the preparation of the RAR by Agent Little, constitute tentative, not final actions. *See Biewer v. Commissioner*, 341 F.2d 394, 396–97 (6th Cir.1965) (stating that without deficiency assessment the content of revenue agent's report cannot bind Commissioner); *Garity v. United States*, 81–2 U.S.Tax Cas. (CCH) ¶ 9599, at 88,005–006, 46 A.F.T.R.2d (P–H) ¶ 80–5062, at 80–5145, 1980 WL 1765 (E.D.Mich.1980) ("[C]onclusions and reasoning of IRS agents are irrelevant to the validity of the assessment...."); *H.F. Campbell Co. v. Commissioner*, 53 T.C. 439, 449–50, 1969 WL 1661 (1969), *supplemented*, 54 T.C. 1021, 1970 WL 2308 (1970), *aff'd*, 443 F.2d 965 (6th Cir.1971) (ruling that no finality attaches to revenue agent's action prior to issuance of notice of deficiency); *Diebold Inc. v. United States*, 16 Cl.Ct. 193, 210, *aff'd*, 891 F.2d 1579 (Fed.Cir.1989), *cert. denied*, 498 U.S. 823, 111 S.Ct. 73, 112 L.Ed.2d 47 (1990) (holding that absent final action on a refund claim, RAR does not bind Commissioner).

■ Plaintiff requests that the court ignore this body of case law and rule that the 1987 RAR creates a rebuttable presumption as to plaintiff's tax liability. In effect, plaintiff asks that the status of the RAR be elevated. Two reasons counsel against granting plaintiff's request. First, the Commissioner, consistent with plaintiff's request, never examined plaintiff's refund claim and accordingly did not evaluate the contents of the RAR. The IRS also did not process any refund, or issue a notice of deficiency, or make any tax assessments for the taxable year 1987. The persuasiveness of an RAR is minimal, absent some final action by the Commissioner regarding a deficiency, assessment, or refund. *Garity*, 81–2 U.S.Tax Cas. at 88,005–006, 46 A.F.T.R.2d at 80–5145, 1980 WL 1765; *H.F. Campbell*, 53 T.C. at 449–50, 1969 WL 1661; *Diebold*, 16 Cl.Ct. at 210.

Second, other established avenues existed through which plaintiff could have obtained a more binding agreement as to the adjustments underlying plaintiff's refund claim. For example, plaintiff could have executed a Form 870–AD settlement agreement, a form which, under certain circumstances, can bind the parties with regard to the issues agreed therein. *See Elbo Coals, Inc. v. United States*, 763 F.2d 818, 821 (6th Cir.1985) (holding taxpayer equitably estopped from pursuing suit for refund where IRS made concessions and both parties executed Form 870–AD); *General Split Corp. v. United States*, 500 F.2d 998, 1003–04 (7th Cir.1974) (holding that based on equitable estoppel principles, parties were effectively bound by settlement specified on Form 870–AD); *Kretchmar v. United States*, 9 Cl.Ct. 191, 197 (1985) ("[A] *properly executed* Form 870–AD ... estop[s] taxpayers from litigating the merits of tax refund claims settled therein." (citations omitted; emphasis in original)). *But see Whitney v. United States*, 826 F.2d 896, 898 (9th Cir.1987) (ruling that Form 870–AD does not, by itself, bar filing of a refund suit). Plaintiff also could have entered into a closing agreement or com-

promise with the IRS or requested that the IRS issue a ruling or provide "technical advice" regarding the taxable year at issue. *See* 26 U.S.C. §§ 7121, 7122 (settlement and compromise agreements); 26 C.F.R. § 601.201(a)(2) (ruling); 26 C.F.R. § 601.106(f)(9) (technical advice). Plaintiff failed to pursue these options, and instead elected to rely solely upon the RAR.

■ Plaintiff further argues that the unusual circumstances of this case warrant the creation of the presumption that the 1987 RAR establishes plaintiff's tax liability. Specifically, plaintiff argues that both parties to this litigation, at one time, agreed that plaintiff overpaid the IRS in an amount exceeding $11 million, as evidenced by the 1987 RAR, and therefore that the adjustments underlying the overpayment are not "at issue." Plaintiff completely ignores the fact that by initiating this lawsuit it placed "at issue" all of the 170 favorable adjustments underlying its refund claim. *Cf. Mahoney v. United States*, 223 Ct.Cl. 713, 1980 WL 4712, *modified*, 224 Ct.Cl. 668, 1980 WL 13223 (1980) (ruling that in tax refund case where plaintiff raises specific issue as to a tax, which in this case is the valuation of certain property owned by plaintiff, then plaintiff bears burden of proof with respect to that issue); *Dysart v. United States*, 169 Ct.Cl. 276, 282, 340 F.2d 624, 628 (1965) (stating that to recover, taxpayer must, at a minimum, "prevail on the particular items on which he sues"). Thus, contrary to plaintiff's belief, defendant is not required to provide "evidence that the agreed adjustments are 'in issue.'" Plf's Br. filed Jun. 4, 1993, at 12. Moreover, that an IRS revenue agent or several agents at one point agreed with the adjustments does not support the creation of a presumption. *See Garity*, 81–2 U.S.Tax Cas. at 88,005–006, 46 A.F.T.R.2d at 80–5145, 1980 WL 1765 (holding that "opinions ... of IRS agents are irrelevant to the validity of the assessment...."); *cf. Coleman v. United States*, 82–1 U.S.Tax. Cas. (CCH) ¶ 9133, at 83,111, 1981 WL 1937 (E.D.Ky.1981), *rev'd on other grounds*, 704 F.2d 326 (6th Cir.1983) ("[T]he United States cannot be estopped by any statements made by an individual IRS employee, even where the taxpayer may have relied ... to his detriment." (citation omitted)). Such an agreement may be persuasive evidence, but it does not rise to the level of a presumption.

Plaintiff also contends that a presumption is necessary in this case because, without one, plaintiff, in effect, will be forced to submit to a reaudit, or second audit, which it maintains is contrary to *Mahoney*, 223 Ct.Cl. 713, 1980 WL 4712. *Mahoney* dealt with discovery abuse. Specifically, the court in *Mahoney* prohibited the Government from raising meritless offset claims and from using extensive discovery to, in effect, reaudit plaintiff. Unlike *Mahoney*, defendant in this case has not presented discovery requests supporting meritless offsets; rather, defendant has moved for discovery only with regard to the issues presented in plaintiff's complaint, the 170 favorable adjustments.

To further bolster the alleged reaudit injustice, plaintiff argues that none of the cases upon which defendant relies involved such "a wholesale reauditing of a return or ... discuss[ed] ... any element of the taxpayer's tax liability *other than the specific items raised by the taxpayer....*" Plf's Br. filed Mar. 26, 1993, at 16 (emphasis added). Plaintiff admits that the cases upon which defendant relies addressed the "specific items raised by the taxpayer." Again, in the case at bar, the issues raised by plaintiff's refund claim involve 170 distinct, favorable adjustments. Defendant does not seek a complete reaudit of plaintiff's taxable years; instead it attempts only to defend against plaintiff's claim, a right to which it is entitled under *Lewis* and its progeny. *See Lewis*, 284 U.S. at 283, 52 S.Ct. at 146 ("While the statutes authorizing refunds do not specifically empower the Commissioner to reaudit a return whenever repayment is claimed, authority therefor is necessarily implied...."). Although defendant's defense may require plaintiff to supply information similar to that provided in previous audits, this is a fact inherent in all tax refund litigation.

Finally, plaintiff attempts to disguise its presumption theory by calling the RAR a mere "starting point for determining Sara Lee's correct tax liability." Plf's Br. filed June 4, 1993, at 9 (footnote omitted). Even assuming, *arguendo*, that the RAR does satisfy plaintiff's burden of going forward, the RAR does not create a presumption that plaintiff is entitled to a refund as a matter of law.

### 4. *Defendant's offsets*

■ In discussing the issue of offsets and defendant's attendant burden of proof, plaintiff, at times, appears confused as to the distinct burdens of proof each party to a refund suit bears. The Court of Claims in *Missouri Pacific*, 168 Ct.Cl. at 91, 338 F.2d 668, 671–72, clarified this exact issue by stating that "before the taxpayer has the burden of proving the correctness of the challenged item[,] ... the government has the burden of going forward ... [with regard to] its setoff defense...." Accordingly, once the IRS has satisfied its burden regarding the setoff defenses, plaintiff must affirmatively prove each and every item pertaining to the 170 favorable adjustments underlying the claimed refund. Plaintiff's burden, therefore, is wholly distinct from defendant's burden of proof with regard to the raised offsets, *i.e.*, setoff defenses.

*Missouri Pacific* and *Mahoney*, two cases upon which plaintiff relies heavily, describe, in detail, defendant's burden of proof with regard to offsets. These cases stand for the proposition that when defendant raises an offset that

"challenges the validity of the tax treatment accorded an item found in the same tax return....

....

... the government has the burden of going forward.... to demonstrate that it has some concrete and positive evidence, as opposed to a mere theoretical argument...."

168 Ct.Cl. at 90–91, 338 F.2d at 671–72. To satisfy its burden, defendant must demonstrate "that its claim has sufficient substance[,] ... [and] is made in good faith, rather than for improper purposes of deterrence and harassment...." *Ahmanson Found. v. United States*, 674 F.2d 761, 777 (9th Cir.1981). Defendant must also show that in raising the offset it does not intend to engage in "a mere fishing expedition." *Missouri Pac.*, 168 Ct.Cl. at 91, 338 F.2d at 672. Hence, the general principle in the case of government offsets is "where the taxpayer raises specific issues as to a tax, [in this case the 170 favorable adjustments,] and there is no good reason for the government to challenge the remainder of the items going to make up the tax, the government should not be able to cast the burden on the taxpayer of proving each and every item...." *Id.*

■ An offset and a defense to the affirmative issues raised in a plaintiff's complaint—here, the 170 favorable adjustments—are two distinct issues, only the former of which must comply with the principles established in *Missouri Pacific*. In the case at bar, defendant raises two offset defenses, including both the adverse adjustments listed in the 1987 RAR, as well as the ANC issue. Plaintiff takes the position that defendant has failed to raise any offsets. First, plaintiff contends that the adverse adjustments set forth in the 1987 RAR were appropriately netted out of the minimum refund, and, as such, those adjustments would have no effect on the claimed refund. Second, plaintiff disputes the validity of the ANC issue as an offset, since again such amount would not affect the minimum refund.

■ The offsets defendant has proposed to date could qualify as offsets in certain circumstances. For example, if plaintiff loses with respect to certain favorable adjustments, plaintiff may contest certain adverse adjustments in the 1987 RAR, to which it had previously "agreed." Moreover, if plaintiff recovers any amount as a result of the favorable adjustments at issue, the ANC issue would qualify as an offset. Because both of these offsets involve the 1987 tax return, according to *Missouri Pacific*, once defendant provides some concrete and positive evidence as to

the validity of the two offset claims, the burden shifts back to the plaintiff to establish its entitlement to the approximately 170 favorable adjustments underlying the claimed refund. *Missouri Pac.,* 168 Ct.Cl. at 92, 338 F.2d at 672. As the Court of Claims noted in *Dysart,* "[i]t is not enough that ... [plaintiff] can prevail on the particular items on which he sues, for he may have underpaid with respect to other components entering into that tax...." 169 Ct.Cl. at 282, 340 F.2d at 628. Hence, "[o]nly if the overall balance moves ... [plaintiff's] way can he recover...." *Id.* Although defendant currently has raised only two offsets, defendant is not estopped from raising additional offsets so long as those offsets are both supported by concrete and substantial evidence and raised in a timely manner. *St. Louis–San Francisco Ry. v. United States,* 189 Ct.Cl. 280, 282, 417 F.2d 1359, 1360 (1969) (stating that defendant can amend answer to include additional setoff defenses in pretrial stage on condition that defendant does not "unduly delay the raising of the issue"); *Dysart,* 169 Ct.Cl. at 281 (holding that where taxpayer's claim and Government's offset concern the same taxable year, "the government's right to raise such a defense is unconditional...."); *Missouri Pac.,* 168 Ct. Cl. at 91, 338 F.2d at 672 (explaining that defendant must produce concrete and positive evidence for offsets asserted).

### CONCLUSION

Accordingly, based on the foregoing, plaintiff's motion for partial summary judgment is denied.[14]

---

14. At the outset of argument on July 16, 1993, the court indicated the significant problems with plaintiff's theory and commended defendant's proffered alternative of returning to the IRS in order to resolve finally all of plaintiff's claims other than the ANC issue. Due to the good offices of defense counsel and plaintiff's counsel's willingness to revisit an arena of relief that had not thus far been productive, the parties were able to reach an accommodation. It is anticipated that the complaint will be dismissed voluntarily and that plaintiff's claim will be reactivitated on the ANC issue if it cannot be resolved administratively.