Irene H. DZURIS, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 97–184T.

United States Court of Federal Claims.

Aug. 10, 1999.

ta C. Argrett, for defendant. David Gustafson, Assistant Chief, Court of Federal Claims Section, of counsel.

## *OPINION*

MILLER, Judge.

This case is before the court after argument on the parties' cross-motions for summary judgment and limited supplemental briefing. The decisive issue is whether plaintiff submitted timely a refund claim to her 1986 or 1987 tax return electing income averaging with respect to a lump-sum retirement distribution.

## FACTS

The following facts are undisputed, unless otherwise noted. In December 1986 Irene H. Dzuris ("plaintiff")[1] terminated her employment with General Motors ("GM"). While employed at GM, plaintiff participated in a Savings–Stock Purchase Program ("S–SPP") retirement plan. The parties do not dispute that the S–SPP was a qualified plan within the meaning of section 401(a) of the Internal Revenue Code ("I.R.C."), entitled "QUALIFIED PENSION, PROFIT–SHARING, AND STOCK BONUS PLANS."[2] Having separated from service, plaintiff received a lump-sum distribution in March 1987. At the time of receipt, plaintiff was not yet 50 years of age.

According to plaintiff, GM sponsored a seminar in November 1986 informing its employees of the tax consequences associated with the lump-sum distribution from the S–SPP. GM provided materials at this seminar indicating that an employee may receive a lump-sum distribution from the retirement plan, *inter alia*, because of separation from service, and outlined plaintiff's options, stating that "[y]ou may roll over the distribution to an IRA and defer the taxes until you start making withdrawals, or you can pay taxes, and if eligible use a special tax method called five or ten year averaging. This special tax treatment may only be used one time." In light of the Tax Reform Act of 1986, Pub.L.

Irene H. Dzuris, Washington, MI, pro se.

Mary M. Abate, Washington, D.C., with whom was Assistant Attorney General Loret-

---

1. Plaintiff was formerly known as Irene H. Hall.

2. Unless otherwise specified, all references are to the Internal Revenue Code in effect for the year in issue.

No. 99–514, 100 Stat.2085 (1986) ("TRA"), the materials also stated:

The new tax law was passed after this article was written and has made some changes in the old law beginning January 1, 1987. The article has been revised to reflect these changes and, since all the details are not available at this time, it is suggested that you use this material only to give you general guidelines. You should consult your tax advisor concerning your specific situation.

The guidelines indicated, *inter alia,* that, if the distribution met basic eligibility requirements, ten-year forward averaging under 1986 tax tables was available to employees, regardless of age, who terminated employment in 1986 and received the distribution prior to March 15, 1987. Furthermore, an additional 10% tax on pre-age 59–1/2 distributions applied to distributions received in 1987.[3]

Plaintiff filed her 1986 tax return on March 12, 1988. Although having received this lump-sum distribution in March 1987, plaintiff did not report it as income for 1986. Similarly, plaintiff did not report the lump-sum distribution on her 1987 tax return filed on July 22, 1988.[4]

Plaintiff received a notice dated February 20, 1990, from the Internal Revenue Service (the "IRS") of discrepancies and proposed changes to her 1987 tax return. The notice indicated, after comparing the information submitted by plaintiff with that from her employers, a calculation error in plaintiff's taxable wages amounting to $251.00, a pension distribution of $11,524.00, and unemployment compensation of $5,954.00. Given that the pension distribution was premature, the IRS also assessed a 10% additional tax on that amount and so notified plaintiff by letter dated June 4, 1990, in which it proposed additional changes to plaintiff's 1987 tax liability.[5] *See* I.R.C. § 72(t). Plaintiff responded by letter dated June 29, 1990, in which she asserted:

1. When I left GM, I was sent to a consultant and financial planner (a seminar). I checked my notes and it is clear that they told me the settlement amount from my retirement plan could be averaged (income averaged) if I took the buy-out prior to the end of 1986, and would therefore, receive a settlement prio[r] to 3–31–87. This was confusing to me and I did miss it on my 1987 tax return, but it is very clear in my notes. I've made a few calls, i.e. IRS, Financial Planning [C]onsultant, but without success. Can you have someone look into this for me?

---

3. The GM financial materials specifically provided:

In the event you elect to treat a qualifying lump-sum distribution as though it were received in 1986, the distribution will be taxable under the ten-year averaging and capital gain rules applicable in 1986. Also, the new 10% additional income tax on pre-age 59–1/2 distributions will not apply. Your election must be made on your 1986 tax return (or amended tax return). A separate statement electing this special treatment should be attached to your return.

If, however, you choose to treat a qualifying lump-sum distribution as though it were received in 1987, the distribution would be taxable under the new five-year averaging rules. Furthermore, any capital gains treatment would be subject to 1987 tax rates and any pre-age 59–1/2 distributions would be subject to the new 10% additional income tax, unless the distribution qualifies for an exclusion from the income tax.

4. The parties dispute whether plaintiff's 1987 tax return was filed timely. Plaintiff asserts that she filed an application for an automatic extension; defendant responds that plaintiff has not submitted evidence of this application. The court concludes, for purposes of this motion, that plaintiff did file for an extension and timely filed her 1987 tax return.

5. The June 4, 1990 notice also recited, in part: REMINDER: YOU DO NOT HAVE TO FILE AN AMENDED TAX RETURN FOR 1987. HOWEVER, YOU SHOULD REVIEW YOUR PRIOR AND SUBSEQUENT YEAR RETURNS TO DETERMINE IF ALL INCOME FOR THOSE YEARS WAS PROPERLY REPORTED. IF YOU FIND THAT IT WAS NOT REPORTED, YOU SHOULD PROMPTLY FILE AN AMENDED RETURN (FORM 1040X) FOR EACH YEAR AND PAY ADDITIONAL TAX AND INTEREST. DOING SO NOW WOULD BE TO YOUR ADVANTAGE SINCE IT WILL COST YOU LESS IN INTEREST AND YOU MAY AVOID CERTAIN PENALTIES.

2. Also, the 10% additiona[l] tax on "premature" lump sum distribution does not apply in this case. This was a retirement plan not an IRA.

By letter dated July 27, 1990, the IRS both informed plaintiff that it was considering her request to transfer her case to the district office and answered plaintiff's questions. The IRS took the position that plaintiff's distribution was subject to a 10% additional tax and that she "may be able to use Form 4972 to report the lump sum distribution." A copy of Form 4972 was enclosed with instructions for 1987. Thereafter, the IRS, deeming the foregoing sums as income for tax year 1987, assessed a deficiency for tax year 1987 totaling $4,994.00, and notified plaintiff by letter dated October 19, 1990. On April 8, 1991, the IRS assessed penalties and interest on this deficiency for a total of $7,218.12. On April 15, 1991, plaintiff filed an amended tax return for 1987 to claim her daughter's boyfriend as an additional dependent. The IRS denied this request on June 17, 1991.

The IRS issued a reminder of deficiency on May 13, 1991, as well as a notice of overdue tax on July 1, 1991. On October 8, 1991, the IRS denied plaintiff's request for a refund or credit of the negligence and failure to pay penalties. Plaintiff received a final notice—notice of intention to levy—dated October 19, 1991, for the tax periods 1987 and 1988 totaling $8,102.16.

Thereafter, plaintiff paid $8,346.53 at her local IRS office on April 15, 1992. In her letter dated May 21, 1992, plaintiff sought assistance in requesting a waiver of penalties and making arrangements to pay an additional assessment on the underlying 1987 arrearage. By letters dated June 15, 1992, and June 24, 1992, the IRS explained that plaintiff's account was paid in full at that time and that an overpayment from tax year 1991 was applied to the remaining deficiency for 1987. By letter dated August 31, 1992, plaintiff sought assistance from the IRS Problem Resolution Office. The letter explains: "This [1987] arrearage, which was the result of misinformation given to me by my former employer, has caused a great hard-ship to me and my family. Because of this, I asked for a waiver of penalties."

Appeals Officer Bruce H. Skidmore responded to plaintiff's request for consideration on August 4, 1994. Although noting that "[t]he time has expired for [plaintiff] to take up the correctness of the tax and negligence penalty on [her] 1987 return," Mr. Skidmore was willing to entertain plaintiff's contentions "regarding the late filing and late payment penalties." Mr. Skidmore asserted: "The appropriateness of these penalties, however, will not depend on your actions with the IRS after they were assessed, but upon why the return and the payment were late in the first place." The IRS Problem Resolution Office transferred plaintiff's file to the district office and Mr. Skidmore on September 2, 1994. Mr. Skidmore reviewed the information he received and, in a letter dated September 19, 1994, concluded preliminarily that "[she] did not take timely action to resolve this, [she] never presented real evidence that the adjustments made in the statutory notice were incorrect, and now it is too late for further action."

On November 12, 1994, plaintiff submitted a detailed letter to Mr. Skidmore asserting the bases of her claim "to correct errors in [her] 1987 and 1988 taxes, interest and penalties assessed against [her] in 1990." Plaintiff supplemented this information with letters dated November 17, 1994, and November 21, 1994. By letter dated November 17, 1994, the associate chief of the Appeals Office denied plaintiff's request for a penalty adjustment, finding she had "not shown reasonable cause." Mr. Skidmore also replied by letter on November 23, 1994, in which he characterized plaintiff's submissions as detailed, but repetitious without providing new information. Mr. Skidmore noted plaintiff's failure to indicate the legal provision giving her the right to amend her tax return and her failure to act within provided time frames, as well as the fact that her "efforts in talking to people and writing them did not extend the time for [her] to file the claim formally and legally." *See generally Haber v. United States,* 17 Cl.Ct. 496, 501–05 (1989) (noting reliance on advice undermined to extent it was oral), *aff'd,* 904 F.2d 45, 1990 WL 64014 (Fed.Cir.

1990). Mr. Skidmore closed plaintiff's file due to her failure to timely submit requested information.

Plaintiff filed a claim for a refund and request for an abatement—Form 843—on December 30, 1994, for tax year 1987. Plaintiff also attached a copy of Form 4972, entitled "Special 10–Year Averaging Method," for tax year 1986, and Form 1040X, entitled "Amended U.S. Individual Income Tax Return," for tax year 1987. Plaintiff's claim was disallowed on April 19, 1995. Thereafter, plaintiff filed her claim with the Court of Federal Claims seeking a full refund of overpaid taxes, penalties, and interest. The parties engaged in protracted settlement negotiations without success. Consequently, the instant cross-motions for summary judgment were filed and argument was held. On March 15, 1999, the court ordered supplemental briefing on the sole issue of timeliness, and denied plaintiff's motion for summary judgment to the extent that she sought to claim her daughter's boyfriend as an additional dependent for tax year 1987 because plaintiff failed to meet her burden of proof on this issue.

## DISCUSSION

Summary judgment is proper when no genuine issues of material fact are in dispute and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c). Genuine disputes over material facts that may significantly affect the outcome of the matter preclude an entry of judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (finding dispute to be genuine if jury could find in favor of non-moving party). Having cross-moved, each party bears the burden of demonstrating entitlement to judgment, as well as the absence of issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In response to the other's motion, each party must provide evidence that is more than merely colorable. *See id.* at 324, 106 S.Ct. 2548 (noting evidence may be presented in form of affidavits and need not be admissible at trial); *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d

1107, 1116 (Fed.Cir.1985) (noting that non-movant must demonstrate an evidentiary conflict by more than conclusory statements or mere denials).

When resolving a motion for summary judgment, the court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Jay v. Secretary of DHHS,* 998 F.2d 979, 982 (Fed.Cir.1993). Although entitled to "all applicable presumptions, inferences, and intendments," *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), the non-movant bears the burden of presenting sufficient evidence upon which the trier of fact reasonably could find in its favor. *See Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Should the non-movant fail to present such evidence, summary judgment may be granted in favor of the moving party. *See id.* (stating summary judgment may be granted if the evidence is not "significantly probative"). Moreover, the summary judgment "standard mirrors the standard for a directed verdict ..., which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 251–52, 106 S.Ct. 2505 ("In essence, ... the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

Plaintiff contends that she is entitled to elect ten-year averaging for her lump-sum retirement distribution; that the 10% additional tax provided in I.R.C. § 72(t) on early distributions from qualified retirement plans does not apply; and that assessed penalties and interest should be waived. These questions devolve to the essential threshold issue of timeliness.

The TRA promulgated significant changes in the tax law, particularly with regard to lump-sum distributions. Prior to January 1, 1987, I.R.C. § 402(e)(1) provided a ten-year averaging method for lump-sum distributions from qualified plans. The TRA amended I.R.C. § 402(e)(1), *inter alia,* by limiting the former ten-year averaging provision to five

years. *See* TRA § 1122, 100 Stat.2085, 2466. Five-year averaging was limited to those taxpayers who had attained age 59–1/2 at the time of distribution. The TRA also provided for an additional 10% tax on premature lump-sum distributions. *See* TRA § 1123, 100 Stat.2085, 2472; *see also* I.R.C. § 72(t); *Samonds v. Commissioner*, 66 T.C.M. (CCH) 235, 238–39, (1993) (finding distribution received in 1985 and therefore not subject to 10% tax); I.R.S. Notice 87–13, 1987–1 C.B. 432, 443 (1987) (providing that proper section 1124 election would be treated as if received in 1986 and therefore additional 10% tax is inapplicable); *cf. Shimota v. United States*, 21 Cl.Ct. 510, 526 (1990), *aff'd*, 943 F.2d 1312 (Fed.Cir.1991) (holding I.R.C. § 72(t) applicable to distribution received August 3, 1987, unless excepted); *Bullard v. Commissioner*, 65 T.C.M. (CCH) 1844 (1993) (finding I.R.C. § 72(t) applicable to 1987 distribution that taxpayer properly elected to income average over ten years). In general, the effective date of such changes was December 31, 1986. *See* TRA § 1122(h), 100 Stat.2085, 2470.

To alleviate the impact of such changes, Congress enacted transitional rules as part of this reform. TRA § 1124 permitted taxpayers, who separated from service in 1986 and, as a result of this separation, received a lump-sum distribution between December 31, 1986, and March 16, 1987, to "elect to treat such lump sum distribution as if it were received when such employee separated from service." TRA § 1124(a), 100 Stat.2085, 2475.

> Thus, under TRA section 1124(a), a taxpayer may use 10–year averaging for a lump-sum distribution made in 1987 if four requirements are met: (1) The taxpayer separated from employment during 1986; (2) the taxpayer received a lump-sum distribution within the meaning of section 402(e)(4)(A); (3) the taxpayer received such distribution between January 1 and March 15, 1987; and (4) the taxpayer elects to treat the distribution as if received when the employee[ ] separated from service.

*Merritt v. Commissioner*, 64 T.C.M. (CCH) 397, 399 (1992).

Although possessing the authority to issue regulations controlling the manner and time in which such elections must be made, the Secretary of the Treasury has not done so with regard to section 1124(a). *See* I.R.C. § 7805(a); *see also Merritt*, 64 T.C.M. at 399 (noting absence of regulations on time or manner of election); *Younger v. Commissioner*, 64 T.C.M. (CCH) 90, 92 (1992) ("No regulations have ever been issued in respect to TRA section 1124(a)."). Some assistance may be found, however, in I.R.S. Notice 87–13, 1987–1 C.B. 432, 443 (1987), entitled "Employee Plans—Miscellaneous Tax Reform Changes," which states, in pertinent part:

> If a distribution or distributions received during the 2–1/2 month period qualify as a lump sum distribution under section 402(e)(4) as though such period is a full taxable year of the employee, for the employee's 1986 and 1987 taxable years, the employee may elect to treat such lump sum distribution as though it were received on the date the employee separated from service in 1986. Such an election must be made on a return (or amended return) filed by the employee for the employee's 1986 taxable year by the due date (with extensions) for the return for the 1987 tax year, by attaching a statement that such lump sum distribution is to be treated as a section 1124 lump sum distribution.

The instructions accompanying the 1987 Form 4972 provide similarly. Due to the confusing nature of Form 4972 and liberal construction of the transitional relief provisions, the Tax Court in *Younger* determined that a section 1124 election could be made "either ... on an amended 1986 return filed by the due date for the 1987 tax year, or an election for the 1987 tax year on a timely filed return for that year." *Younger*, 64 T.C.M. at 93; *see Merritt*, 64 T.C.M. at 400 (same). In the absence of a regulation, these authorities are persuasive.

The gravamen of plaintiff's contentions is that she timely filed an election to average her lump-sum distribution through the special ten-year averaging method, as provided in TRA § 1124(a), 100 Stat.2085, 2475. *See Younger*, 64 T.C.M. at 93; *see also* I.R.C.

§ 402(e)(1), (4) (providing for income-averaging and defining lump-sum distribution). Although statute and precedent have established guidelines that should render the timing analysis seemingly uncomplicated, the record has been muddled by plaintiff's raising additional facts or theories in every filing and at argument and defendant's attempts to address all of them. Emanating from a *pro se* plaintiff, her arguments have been indulged inordinately. *See generally Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (noting leniency when construing allegations of *pro se* plaintiff); *Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995) (finding *pro se* status may explain ambiguities in complaint, but does not excuse failures therein); *Kelley v. Secretary of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987) (refusing to extend leniency to *pro se* plaintiff on jurisdictional issue).

The parties do not dispute that plaintiff received a lump-sum distribution prior to March 1987 from a qualified plan. Plaintiff thus could claim this distribution on an amended 1986 tax return filed by the due date of her 1987 return or on her timely filed 1987 return. Plaintiff filed her 1986 tax return on March 12, 1988, and her 1987 tax return on July 22, 1988. Assuming that the latter filing was timely by means of an extension, plaintiff had until July 22, 1988, to elect ten-year averaging under section 1124. Plaintiff did not declare this income on either her 1986 tax return, an amended 1986 tax return, or her 1987 tax return. Plaintiff's arguments to the contrary notwithstanding, her failure to make an original election consisting of some indication to income average the disbursement over ten years in accordance with section 1124 is fatal.[6]

Requiring election by the filing date of the 1987 return, including extensions, serves the interests of both the taxpayer, as well as the IRS. *See Merritt*, 64 T.C.M. at 400 (noting no prejudice to taxpayer or IRS). Although requests for extensions to make such an election have been granted after filing of the 1987 tax return, if made within a reasonable time,[7] plaintiff neglected to make this request or to comply with the procedures for making an election by declaring the distribution to the extent that she possessed information.[8] Furthermore, although the Form 4972 instructions may be confusing, plaintiff has not demonstrated that the foregoing deadlines were unreasonable. *See* I.R.C. § 7805(a), (d); *Colt Indus., Inc. v. United States*, 880 F.2d 1311, 1314 (Fed.Cir.1989). Plaintiff therefore is unable to claim the disbursement as if it had been received in 1986.

Plaintiff has proffered labyrinthian arguments that she filed timely both a formal and informal claim for a refund and thus should be permitted to elect ten-year averaging, irrespective of her failure to make a section 1124 election on her original 1987 tax return or an amended 1986 return filed by the 1987 due date. According to plaintiff, a timely section 1124 election could be made on an amended return for either 1986 or 1987. Such an amendment would be timely if filed within three years of the date of filing the return or two years after the taxes at issue were paid. *See* I.R.C. § 6511. To focus the parties on all issues raised by plaintiff concerning the timeliness of her election, rather than on the IRS' failure to have any record of it, which would not be dispositive, the court ordered supplemental briefing and provisionally found, for purposes of this briefing, that plaintiff filed Form 4972[9] on March 1, 1991, as plaintiff averred. Paragraph 1 of

---

6. Because of plaintiff's failure to file timely, the court need not reach defendant's arguments regarding eligibility.

7. Although nonprecedential, Private Letter Rulings suggest extensions may have been granted, if requested within a reasonable time, after the filing date for 1987. *See, e.g.*, P.L.R. 92–40–034 (Oct. 2, 1992) (granting extension to make section 1124 election under section 301.9100–1 of Procedure & Administration Regulations); P.L.R. 92–40–033 (Oct. 2, 1992) (same); P.L.R. 92–40–032 (Oct. 2, 1992) (same).

8. Plaintiff maintains that she did not declare her distribution due to a lack of information, *e.g.*, the absence of Form 1099R. Plaintiff, however, was in receipt of the distribution and could have, at a minimum, declared the amount of which she was aware or sought extensions of time until she possessed the necessary information. Plaintiff's inaction was unreasonable.

9. The order incorrectly identified the form as Form 4297.

the March 15, 1999 order recites: "The court finds, provisionally, that plaintiff filed a Form [4972] for 1986 on or about March 1, 1991, because the [IRS] has lost plaintiff's administrative file and did not make a showing that it was destroyed as part of a regular procedure for dated records."[10] Review of the supplemented record reveals that further briefing would serve no purpose.

The question raised by plaintiff has not been addressed by statute or precedent. After considering all relevant information, the court in *Younger* allowed a 1986 amended return filed by the due date of the 1987 return or a timely 1987 filing. Nonetheless, *Younger* expresses an intent to limit the time in which an election may be made. The unpublished decision in *Grumbles v. Commissioner*, 997 F.2d 881 (5th Cir.1993) (Table),[11] in which the court found that plaintiff could make a section 1124 election on a later-filed amended return, is distinguishable. The taxpayer filed Form 4972 with a timely submitted 1987 return, attempting, albeit improperly, to comply with the reporting requirements and, upon notification of ineligibility, submitted amended returns for 1986 and 1987. *See Younger*, 64 T.C.M. at 91 (electing income averaging by attaching Form 4972 to timely filed 1987 return, declaring distribution, and paying taxes thereon). Nevertheless, even if this court were to permit such a liberal reading of the statutory time periods in the instant case, plaintiff failed to show that she complied with governing statutes by timely filing an amended election or claim for a refund and thus did not satisfy her burden of proof on summary judgment.

A claim for a refund may be made formally through the submission of the proper forms to the IRS within the prescribed time period. I.R.C. § 6511(a) recites, in pertinent part:

Claim for a credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the

return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid.

*See* I.R.C. § 6511(b) (providing for credit or refund only if claim timely filed and limits thereon); *see also* Treas. Reg. § 11.402(e)(4)(B)–1 (1998) (listing eligibility factors and noting that election to treat amount as lump-sum distribution must occur within time period in section 6511).

■ An informal claim for a refund within the statutory period may also be sufficient in certain circumstances. An informal claim must consist of a written component that advises the IRS that the taxpayer seeks a refund for a particular year. *See Arch Eng'g Co. v. United States*, 783 F.2d 190, 192 (Fed.Cir.1986); *Donahue v. United States*, 33 Fed.Cl. 600, 608–10 (1995) (discussing informal claims). To constitute an informal claim, the information submitted must be sufficiently specific to notify the IRS that a refund is being sought; the IRS is not required to " 'deduce that the taxpayer is entitled to, or might desire, a refund.' " *Id.* at 609 (quoting *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 113–14, 318 F.2d 915, 920 (1963)). Whether plaintiff submitted an adequate informal claim is determined in light of the totality of the circumstances on a case-by-case basis. *See Newton v. United States*, 143 Ct.Cl. 293, 300, 163 F.Supp. 614, 618–19 (1958); *Donahue*, 33 Fed.Cl. at 608 (noting that " '[t]he basic underlying principle [of an informal claim] is the necessity to put the [IRS] on notice of what the taxpayer is claiming and that he is in fact making a claim for a refund' ") (quoting *Newton*, 143 Ct.Cl. at 300, 163 F.Supp. at 619).

If otherwise eligible, a timely election for income averaging of a lump-sum distribution could be made on an original or amended tax return for 1986 or 1987. *See* TRA §§ 1122(h)(3), (5), 100 Stat. 1085, 2470–71 (providing that taxpayer who has attained

---

**10.** The court's order did not foreclose defendant from attacking the provisional ruling, including the adequacy of the Form 4972.

**11.** A copy of this decision was published in *Tax Notes Today* on July 16, 1993, and is available in Westlaw, TNT, 93 TNT 149–7.

age 50 before January 1, 1986 may elect ten-year averaging); *Younger,* 64 T.C.M. (CCH) at 93 (1992) (holding election under section 1124 taxable as if received in 1986 if made on "an amended 1986 return filed by the due date for the 1987 tax year, or [as] an election for 1987 on a timely filed return for that year"); *see also* I.R.C. § 402(e)(1) (providing, as amended, for five-year income averaging); Treas. Reg. § 11.402(e)(4)(B)–1(c)(2) ("An election by the taxpayer with respect to a taxable year shall be made by filing Form 4972 as a part of the taxpayer's income tax return or amended return for the taxable year."). Plaintiff submitted her 1987 tax return on July 22, 1988.[12] Assuming this filing was timely by means of an extension, plaintiff had until July 22, 1991, to amend her return and claim a refund by electing income averaging. In the alternative, having paid the assessed taxes on April 15, 1992, plaintiff had until April 15, 1994, to make a timely claim.[13]

■ Although maintaining that she filed a 1986 Form 4972 election on or about March 1, 1991, plaintiff concedes that she cannot prove that this form was sent or received. *See* Plf's Br. filed Oct. 14, 1998, at 28. In a claim for a refund, plaintiff bears the burden of proof and persuasion. *See Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933); *see also Sara Lee Corp. v. United States,* 29 Fed.Cl. 330, 334 (1993) (outlining standards for burden of proof in tax refund case). The copy of Form 4972 submitted is suspect for several reasons: (1) It is undated; (2) it is included with a December 30, 1994 filing; (3) the form is referenced in other correspondence as dated December 30, 1994; (4) it is not listed in the IRS log of documents in plaintiff's file that was generated in connection with her appeal, although prior and subsequent filings are listed; (5) plaintiff's correspondence with the IRS does not refer to this form as having been filed until December 1994; (6) plaintiff has neither

alleged nor presented evidence that the amount listed on the form, $620.00, was paid; and (7) the form lists plaintiff's current surname, rather than her former surname, which appears alone on all other documentation during the 1991 time period.[14] Plaintiff may not proffer an undated form to create a conflict within her own evidence for purposes of surviving summary judgment. *See Sohm v. United States,* 3 Cl.Ct. 74, 77–78 (1983) ("The affidavit and letter together are not supportive of delivery in the ordinary course because they are contradictory; nor do they raise a genuine issue as to a material fact because summary judgment cannot be defeated by instigating controversy with one's own position on the facts.") (citation omitted).

Plaintiff failed to satisfy her evidentiary predicate on summary judgment because she has submitted insufficient evidence that a formal claim for income averaging was filed timely. Plaintiff received the disbursement prior to filing her 1986 tax return; was notified of correct distribution amounts by letters from the plan trustee, Metropolitan Life Insurance Co. ("Metropolitan Life") dated October 18, 1989, and March 20, 1990; and received Form 1099R from Metropolitan Life prior to the expiration of either the initial three-year limitations period or the two-year period following payment. However, the record is devoid of evidence that plaintiff attempted to comply with applicable provisions by reporting this income on her original returns for 1986 or 1987 or by filing a timely refund claim. Plaintiff's Form 4972 alone, even if received, is evidence of nothing and thus insufficient to withstand summary judgment. *See Anderson,* 477 U.S. at 249–51, 106 S.Ct. 2505 (rejecting evidence that is not sufficiently probative).

■ Plaintiff also relies on two letters dated June 29, 1990, and May 21, 1992, to support her contention that she timely filed an informal claim. Plaintiff's June 1990 let-

---

12. Because plaintiff could declare her distribution on either her 1986 or 1987 tax form, *see Younger,* 64 T.C.M. at 93, the court employs the latter for purposes of calculating the limitations period. *See* I.R.C. § 6511(a).

13. Even if this time period were extended to run from the time the remaining taxes were paid for

the assessed 1987 tax deficiency—June 15, 1992—plaintiff's claim was not timely because it was not submitted within two years of this date.

14. The court notes that plaintiff begins to utilize her current surname on documents in 1992.

ter requests an appointment with an expert to discuss her 1987 tax return. Although mentioning income averaging with regard to her retirement settlement from GM, plaintiff does not indicate that she is making a claim for a refund or credit. Plaintiff did not mention that she was interested in averaging the distribution over ten years, although, due to the changes in the tax law, she, if eligible, could have elected five or ten-year averaging by claiming the income in 1987 or 1986, respectively. *See* I.R.C. § 402(e)(1), (4); *see also* TRA §§ 1122, 1124, 100 Stat.2085, 2466–72, 2475–76. Plaintiff also did not indicate whether she was claiming this distribution for tax year 1986 or tax year 1987. The IRS was not responsible for reading between the lines and divining that plaintiff sought a refund or credit. Indeed, plaintiff's letter was phrased merely as a request for information.

■ Plaintiff's May 21, 1992 letter is similarly deficient .and does not constitute an informal claim. This letter specifically seeks assistance with a waiver of penalties; it is not a request for a refund or credit of the amount upon which the penalties were assessed. In explaining her mistake, which she characterized as apparently "fall[ing] squarely on [her] shoulders," plaintiff indicated that she was informed that she "could *income average* the disbursement [and] . . . that there would be *no* 10% penalty for early withdrawal of the retirement fund." While indicating that the mistakes were on her 1987 tax return, plaintiff failed to mention that she was making a specific claim to declare the disbursement as 1986 or 1987 income. Plaintiff also did not state whether she desired to income average the disbursement over five or ten years. In sum, plaintiff's letter is a request to avoid penalties and provides scant information concerning the bases of her underlying assumptions and ac-

tions. This letter is insufficient to notify the IRS of plaintiff's purported claim.[15] Furthermore, subsequent correspondence does not remedy plaintiff's lack of specificity in the preceding letters and confirms that plaintiff was seeking a waiver of penalties rather than claiming a refund or credit.

Plaintiff did not submit a formal or informal claim prior to the expiration of either the three-year period after filing or the two-year period following payment of the taxes assessed. Indeed, plaintiff did not submit a claim for refund and request for abatement until December 30, 1994. In light of the information in plaintiff's possession, the failure to report the distribution or request extensions, until such time as she was able to provide a precise amount, was unreasonable. The IRS properly assessed penalties and interest.[16] *See* I.R.C. §§ 6651, 6653. Plaintiff's lump-sum distribution properly was deemed to have been received in 1987 and subject to the tax laws in effect for tax year 1987, including I.R.C. § 72(t). Thus, although plaintiff may have been eligible to income average her disbursement, her failure to declare this income on either an original or amended tax return for 1986 or 1987 filed by July 22, 1988, as well as her failure to claim timely a refund or credit, precludes any recovery.[17]

## CONCLUSION

Defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

15. With regard to plaintiff's statements that defendant has acknowledged the foregoing letters as sufficient to constitute an informal claim, defendant has not conceded that the June 29, 1990, and May 21, 1992 letters constitute an informal claim. *See* Def's Br. filed Nov. 12, 1998, at 6 n. 1. Moreover, defendant's generous statements, made within the context of correspondence concerning settlement of this case, are not determinative of the legal sufficiency of these letters.

16. Defendant also points out correctly that a portion of the penalties and interest assessed related to other income that plaintiff did not report on her 1987 tax return.

17. Mitigation of the limitations period as provided, in I.R.C. §§ 1311–1314, is not applicable. *See Heineman v. United States*, 183 Ct.Cl. 17, 20–23, 391 F.2d 648, 650–52 (1968); *F.W. Boelter Co. v. United States*, 12 Cl.Ct. 120, 123 (1987).